**Affirmed as Modified; Opinion Filed June 16, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00588-CV

**TRANSCONTINENTAL REALTY INVESTORS, INC., Appellant**
**V.**
**ORIX CAPITAL MARKETS LLC AND WELLS FARGO BANK, N.A. A/K/A WELLS FARGO BANK MINNESOTA, N.A. AS TRUSTEE FOR THE MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 99CI, Appellees**

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-15428-G**

## MEMORANDUM OPINION

Before Justices Fillmore, Myers, and Evans
Opinion by Justice Myers

Transcontinental Realty Investors, Inc. appeals the trial court's judgment awarding ORIX Capital Market damages of $408,765.98 as well as ORIX's attorney's fees and expenses in this suit on a guaranty agreement. The trial court also ruled that Transcontinental take nothing on its claims against ORIX and Wells Fargo Bank, N.A. a/k/a Wells Fargo Bank Minnesota, N.A. as trustee for the Mortgage Pass-Through Certificates, Series 99CI ("Wells Fargo"). Transcontinental brings six issues on appeal contending the trial court's findings of fact and conclusions of law are erroneous. We modify the trial court's judgment concerning the award of expenses and "miscellaneous professionals' fees," and we affirm the trial court's judgment as modified.

# BACKGROUND

This lawsuit originates from a commercial real estate transaction in California. In 1999, the original lender loaned the original borrower almost $7 million for the purchase of a medical office building in Los Angeles. The lender received a non-recourse note for the property limiting the lender to recovery through foreclosure of the property.[1] The promissory note provided it could not be prepaid more than three months before the maturity date; therefore, any conveyance of the property required the purchaser to assume the note and deed of trust. After the loan closed, the loan documents were transferred to Wells Fargo. Pursuant to a Pooling and Servicing Agreement, Wells Fargo appointed ORIX Capital Markets as the special servicer of the loan and provided ORIX power of attorney to act on behalf of Wells Fargo in servicing the loan. In 2000, the original borrower assigned the loan to TCI 9033 Wilshire Boulevard, Inc. ("9033"), which was a subsidiary of Transcontinental. 9033 purchased the property and assumed the loan, but Transcontinental provided the cash for the purchase. After purchasing the property, 9033 had no assets other than title to the property.

The deed of trust required 9033 to have an "all risk" insurance policy covering the property. In 2000, an all-risk policy provided coverage for any damage caused by terrorism. After the terrorist attacks in New York City, Pennsylvania, and Washington, D.C. on September 11, 2001, 9033's insurer excluded from coverage any damage caused by an act of terrorism. In 2002, the loan servicer, ORIX, required 9033 to obtain terrorism insurance on the property. *See ECF N. Ridge Assocs., L.P. v. ORIX Capital Mkts., L.L.C.*, 336 S.W.3d 400, 403 (Tex. App.— Dallas 2011, pet. denied). 9033 refused, ORIX declared 9033 in default, and ORIX demanded that 9033 pay the default interest rate. In 2004, 9033 sued ORIX for breach of contract and for

---

[1] There was also a guaranty and indemnity agreement providing for recovery by the lender in certain limited circumstances that did not arise in this case.

declaratory judgment ("the insurance litigation"). *See id.* The loan documents permitted the lender to recover its costs and expenses incurred in enforcing the loan documents.

While the insurance litigation was pending, 9033 received an offer to purchase the property and assume the loan. 9033 asked ORIX to approve an assumption by the buyer, and 9033 agreed to pay the default interest without waiving its right to seek determination in the insurance litigation of whether it defaulted on the loan by not obtaining terrorism insurance. Because 9033 was a single-purpose entity with no assets other than title to the property, ORIX knew that after 9033 transferred the property to the buyer, 9033 would have no assets from which to satisfy a judgment against it in the insurance litigation.

Transfers of the property by the borrower were governed by the deed of trust. The deed of trust stated that voluntary transfers of the property were prohibited without the lender's prior written consent. The deed of trust stated the lender could condition its consent to the transfer of the property on various specific conditions, including an assumption fee and payment of all of the lender's expenses in the transfer, as well as "satisfaction of such other conditions as Lender shall determine in its sole discretion." The deed of trust also stated that "[n]o request for consent will be entertained by Lender if the Loan is in default," and "[a]ny approval or denial of consent to a Transfer . . . shall be in the sole and absolute discretion of Lender."

On March 23, 2005, ORIX sent 9033 a proposal for the assumption conditioning approval of consent on 9033 and its co-plaintiff in the insurance litigation dismissing their claims in that case. 9033 rejected this term of the assumption proposal. That same day, ORIX amended the assumption proposal and removed the requirement of dismissal of the insurance litigation. On March 31, ORIX held a committee meeting to determine whether to consent to the assumption. The committee recommended approval of the assumption with certain conditions, including that Wells Fargo must be indemnified for its expenses in the insurance litigation. On

April 1, ORIX sent Transcontinental (9033's parent) its consent to the transfer provided that certain conditions were satisfied; one of those conditions was that the buyer of the property would expressly assume any liability of 9033 as a result of the insurance litigation. On April 6, the buyer responded to the conditions and stated it would not assume any liability resulting from the insurance litigation and that 9033 should make whatever arrangements were necessary for ORIX to delete this condition. On April 7, ORIX's lawyer stated in a letter that it would remove the condition that the buyer expressly assume 9033's liability in the insurance letter. ORIX's lawyer then stated,

> [T]he assumptor needs to know what it is assuming and ORIX was attempting to highlight the fact that the assumed obligations inescapably include the provisions whereby the costs of enforcing and defending the Loan Documents . . . are part of the loan's obligations, which are secured by the lien against the subject property. Whatever manner your client [9033] and its purchaser desire to implement to alleviate the buyer's risk as between seller and buyer is your concern. It is not the lender's responsibility to satisfy the assumptor that there is no risk involved with the loan assumption, rather it is the seller's responsibility.

The next day, 9033's lawyer for the assumption transaction sent ORIX's lawyer an e-mail suggesting that the assumption agreement include a provision that ORIX would not look to the property for satisfaction of any judgment in the insurance litigation in return for Transcontinental guaranteeing the performance of its subsidiary, 9033. The parties exchanged e-mails about the precise wording of the guaranty provision, and Transcontinental never objected in writing to the requirement that it provide a guaranty of 9033's liability in the insurance litigation. On May 25, Transcontinental signed an agreement guaranteeing to pay ORIX and Wells Fargo all the costs and expenses incurred by ORIX and Wells Fargo in the insurance litigation and that may be awarded to them in that proceeding or in a separate proceeding. On May 26, ORIX, Wells Fargo, Transcontinental, 9033, and the buyer all signed the Consent and Assumption Agreement authorizing the buyer's assumption of the loan. At the closing, the net proceeds of the sale, over $800,000, were transmitted directly to Transcontinental without passing through 9033.

ORIX ultimately prevailed in the insurance litigation, and the trial court awarded ORIX damages against 9033 in the amount of the default interest. The court also awarded ORIX its attorney's fees of $241,380.39 as well as appellate costs and fees in the event that 9033 unsuccessfully appealed. 9033 did appeal that judgment, and this Court slightly modified the award of default interest and otherwise affirmed the trial court's judgment. *See ECF N. Ridge Assocs.*, 336 S.W.3d at 412. ORIX then demanded that Transcontinental fulfill the guaranty and pay the judgment. Transcontinental refused.

ORIX brought this suit against Transcontinental for breach of contract seeking damages of $325,202.97 plus interest for its attorney's fees, costs, and interest in the insurance litigation and requested recovery of its attorney's fees pursuant to the guaranty agreement.[2] Transcontinental later filed a third-party petition against Wells Fargo and a counterclaim against ORIX for breach of contract alleging they breached the non-recourse provision of the note by attempting to enforce and satisfy the judgment in the insurance litigation against 9033's principal and parent. After a trial before the court, the court rendered judgment that Transcontinental take nothing on its claims and that ORIX recover from Transcontinental damages of $408,765.98 as well as its attorney's fees, "miscellaneous professionals' fees," and expenses through trial of $219,418.59, plus fees for appellate review. At Transcontinental's request, the court made findings of fact and conclusions of law.

## STANDARD OF REVIEW

Findings of fact in an appeal from a nonjury trial carry the same weight as a jury verdict and are reviewed under the same standards that are applied in reviewing evidence to support a

---

[2] Before filing this suit, and while 9033's appeal of the insurance litigation was pending, ORIX filed suit against Transcontinental seeking a declaratory judgment that the guaranty was valid and enforceable and that Transcontinental was obligated to pay all of the noteholder's expenses, attorney's fees, and other costs incurred at all levels of litigation between the noteholder and 9033. The trial court granted the declaratory judgment ORIX requested. However, this Court concluded the trial court lacked subject-matter jurisdiction over the case because it was not ripe for determination due to the pending appeals in the insurance litigation. *See generally Transcontinental Realty Investors, Inc. v. ORIX Capital Mkts., LLC*, 353 S.W.3d 241 (Tex. App.—Dallas 2011, pet. denied).

jury's verdict. *Shaw v. Cnty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light favorable to the fact finder's finding, indulging every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The ultimate test is whether the evidence allows reasonable and fair-minded people to reach the finding under review. *See id.* Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex. 1998). In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

## CONTRACT INTERPRETATION

Many of the arguments in this case concern interpreting the loan documents governing the parties' relationship. The construction of an unambiguous contract is a question of law, which we review de novo. *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). Our primary concern is to determine the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). To determine the parties' intent, we must examine the entire agreement and give effect to all its provisions so that none are rendered meaningless. *Id.* This is often referred to as the "Four Corners Rule," which means that we determine the intention of the parties from the instrument as a whole and not from its isolated parts. *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787

(Tex. App.—Dallas 2005, no pet.). We do not consider the parties' present interpretations of the agreement. *Id.* We are not concerned about the parties' subjective intent. *Id.*

**ORIX'S RIGHT TO REQUIRE TRANSCONTINENTAL'S GUARANTY**

In its first issue, Transcontinental contends the trial court erred by finding and concluding that the "sole discretion" provisions of the note and deed of trust authorized ORIX to require Transcontinental to sign the guaranty as a condition of the loan assumption. Transcontinental argues that ORIX had no right to require the guaranty because of the non-recourse provision of the note.

The non-recourse provision of the note stated:

> Holder agrees that it will look solely to the Property . . . to secure the repayment of the indebtedness evidenced hereby. No other property or assets of Maker, or any partner, member or principal of Maker, shall be subject to levy, execution or other enforcement procedure for the satisfaction of the remedies of Holder, or for any payment required to be made under this Note or any of the other Loan Documents or for the performance of any of the covenants or warranties contained in the Loan Documents.

All the damages ORIX sought in this lawsuit—its attorney's fees, costs, and expenses in the insurance litigation—were for payments required under the loan documents. Transcontinental is correct that under the note's non-recourse provision, standing alone, ORIX had no right to require Transcontinental, 9033's parent, to make the payments required under the loan documents.

However, the transaction was not in a vacuum. Any judgment in the insurance litigation in favor of ORIX could only be enforced against the property pursuant to the non-recourse provision of the note. 9033 desired to sell the property to the buyer, and the buyer refused to assume liability for any judgment resulting from the insurance litigation. The trial court could conclude from this evidence that the buyer would have refused to purchase the property if it had remained subject to foreclosure to satisfy a judgment in the insurance litigation. Unless ORIX

waived its right to satisfy a judgment in the insurance litigation by foreclosing on the property, the sale would not have occurred. However, ORIX was willing to waive that right as long as it received security for any judgment it would be awarded against 9033 in the insurance litigation.[3]

Transcontinental contends ORIX had no right to threaten not to consent to the assumption unless Transcontinental guaranteed any liability 9033 incurred in the insurance litigation. When the buyer refused to assume 9033's potential liability in the insurance litigation, the parties agreed that Transcontinental would guarantee that potential liability in exchange for ORIX giving up its right to foreclose on the property to collect on a judgment in the insurance litigation.

The deed of trust shows that ORIX had the right to refuse to even consider the request for consent to the assumption because the note was in default due to 9033's failure to obtain terrorism insurance and its failure to pay default interest. However, if ORIX did consider the request for consent to the assumption, the deed of trust provided that ORIX had the right to impose any conditions on the assumption. The testimony at trial showed that under California law,[4] the conditions imposed had to be commercially reasonable. Transcontinental contends the requirement in the Consent and Assumption Agreement that it guarantee the potential judgment against 9033 was not commercially reasonable. We disagree. The only way the sale could occur was for ORIX to renounce its right to foreclose on the property to secure payment for a judgment against 9033 in the insurance litigation. 9033 had no assets other than the property, so once the property was sold, ORIX would have had no way to recover on any judgment against 9033 if it agreed not to foreclose on the property. As ORIX's witnesses testified, it would have been

---

[3] The argument section of Transcontinental's appellant's brief fails to even mention that ORIX, in exchange for Transcontinental's guaranty, gave up its right to execute on the property to collect on a potential judgment in the insurance litigation.

[4] The loan documents provided that California law would apply to their construction. The parties utilize California law for certain arguments, primarily related to a lender's duties, but otherwise do not bring to our attention any differences between California and Texas law. We, therefore, use California law where the parties have brought it to our attention, but otherwise use Texas law. *See* TEX. R. EVID. 202.

commercially unreasonable for ORIX not to have a suitable security to pay for any eventual judgment against 9033 and would have constituted a breach of ORIX's contract with Wells Fargo. We conclude the condition that Transcontinental guarantee any potential judgment against 9033 in the insurance litigation was commercially reasonable.

Transcontinental argues it was a breach of the covenant of good faith and fair dealing under California law for ORIX to use its right to impose conditions to its consent to the assumption to reclaim a right it gave up under the original contract. Transcontinental cites *Carma Developers (California), Inc. v. Marathon Development California, Inc.*, 826 P.2d 710 (Cal. 1992). In that case, the California Supreme Court discussed the covenant of good faith and fair dealing in regard to a provision in a lease concerning the lessor's, Marathon's, right to refuse consent to a sublease and the lessor's right in the lease on notice of intent to sublease to terminate the lease and enter into a new lease with the proposed sublessee. *Id.* at 713. In that case, when the lessee, Carma, requested that Marathon approve a sublease, which was to pay Carma a substantially higher rent than Carma was paying Marathon, Marathon terminated the lease and attempted to lease the property at the higher rent to Carma's proposed sublessee. *Id.* Carma contended that Marathon's refusal to consent to the sublease and its termination of the lease with Carma violated the covenant of good faith and fair dealing. *Id.* at 714. The California Supreme Court discussed the covenant in the opinion. *Id.* at 726–29. The court stated, "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Id.* at 726. Transcontinental relies on the following language from *Carma*:

> In the case of a discretionary power, it has been suggested the covenant requires the party holding such power to exercise it "for any purpose within the reasonable contemplation of the parties at the time of formation—to capture opportunities that were preserved upon entering the contract, interpreted objectively."

*Id.* at 727 (quoting Burton, *Breach of Contract & the Common Law Duty to Perform in Good Faith*, 94 HARV. L. REV. 369, 373 (1980)).  In a footnote, the court continued,

> In this context, breach of the covenant of good faith has been characterized as an attempt by the party holding the discretionary power to use it to recapture opportunities forgone in contracting.  "Bad faith performance occurs precisely when discretion is used to recapture opportunities forgone upon contracting— when the discretion-exercising party refuses to pay the expected cost of performance."

*Id.* at 727 n.11 (quoting Burton, at 373).  Contrary to Transcontinental's argument, this statement was not a statement of California law but only a recognition of what one scholar had written in a law review.  The court declined to devise "a rule of all-encompassing generality" and discussed the principles that have emerged from its decisions.  *Id.* at 727.  The court stated that objectively unreasonable conduct could breach the covenant.  *Id.*  The court observed, "It is universally recognized the scope of conduct prohibited by covenant of good faith is circumscribed by the purposes and express terms of the contract."  *Id.*

In this case, the note stated that ORIX "agrees that it will look solely to the Property . . . to secure the repayment of the indebtedness evidenced hereby."  ORIX also agreed that "[n]o other property or assets of Maker, . . . or principal of Maker, shall be subject to levy, execution or other enforcement procedure . . . for any payment required to be made under this Note or any of the other Loan Documents or for the performance of any of the covenants or warranties contained in the Loan Documents."  The note provided that it could be modified "by an agreement in writing signed by the party against whom enforcement of any modification is sought."  The parties modified the non-recourse provision in the Consent and Assumption Agreement whereby ORIX, in consideration for Transcontinental's guaranty, agreed not to look to the property for satisfaction of any judgment in the insurance litigation that was then pending in the trial court.  The Consent and Assumption Agreement was signed by 9033, Transcontinental, the buyer, and ORIX.  Because the parties followed the terms of the note for

amending the note's non-recourse provision, the Consent and Assumption Agreement did not violate the note.

The purposes and express terms of the loan documents reveal an agreement that the property would provide adequate security to ORIX for 9033's obligations under the note and other loan documents. 9033 asked ORIX to approve an assumption and that ORIX give up its right to look to the property for security for the costs and expenses of the insurance litigation, which if ORIX prevailed in the litigation would become part of the balance due under the note and subject to ORIX's right to foreclose on the property to collect the balance due on the note. ORIX's insistence upon security for a potential judgment in the insurance litigation in return for giving up its right to foreclose on the property to collect the judgment was not contrary to the purpose of the loan documents. The loan documents did not contemplate this situation beyond giving ORIX the right to refuse to consider an assumption if the loan was in default. The solution reached by the parties whereby Transcontinental would guarantee any liability of 9033 resulting from the insurance litigation was a reasonable solution, and no evidence shows the condition was imposed in bad faith by ORIX.

Transcontinental also argues that ORIX's conditioning its consent to the assumption on Transcontinental providing a guaranty breached the implied duty of good faith and fair dealing because, under California law, a lessor or lender may not withhold consent to an assignment or assumption unless the lessor or lender has a commercially reasonable objection to the assignee or proposed purchaser or the proposed use. *See Kendall v. Erns Pestana, Inc.*, 709 P.2d 837, 849 (Cal. 1985). In this case, ORIX had a commercially reasonable objection to the proposed purchaser: the proposed purchaser refused to assume liability for a judgment in the insurance litigation, which meant it expected ORIX to give up its right to foreclose on the property to collect on a judgment in the insurance litigation. Under the loan documents, ORIX had the right

to foreclose on the property to enforce a judgment in the insurance litigation. If it was to approve an assumption in which it gave up that right, neither the loan documents nor the implied duty of good faith and fair dealing prohibited ORIX from imposing conditions that would protect its interest in collecting the damages and attorney's fees that might be awarded in the insurance litigation.

Transcontinental also argues the guaranty is not enforceable because it was unconscionable for ORIX to insist upon the guaranty before it would consent to the assumption. Transcontinental also asserts it signed the guaranty under economic duress. In Texas, unconscionable contracts and contracts executed under economic duress are not enforceable. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (orig. proceeding) (unconscionable contracts); *Wright v. Sydow*, 173 S.W.3d 534, 543–44 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (economic duress). Transcontinental asserts the guaranty was unconscionable and that it signed it under duress because ORIX had no right to require the guaranty as a condition for its consent to the assumption. As discussed above, ORIX had the right to require the guaranty as a condition to its consent to assumption of the loan when the assumption required ORIX to give up its right to foreclose on the property to collect on a judgment that might be rendered in its favor in the insurance litigation. Accordingly, Transcontinental's arguments asserting the guaranty was unconscionable and executed under duress lack merit.

We conclude appellants have not shown the trial court erred by finding ORIX had the right to require Transcontinental to guarantee any judgment in the insurance litigation as a condition for ORIX's consent to the assumption. Because ORIX had the legal right to impose the condition, Transcontinental's defense of duress fails. *See In re Frank Kent Motor Co.*, 361 S.W.3d at 632.

–12–

We overrule Transcontinental's first issue.

## ATTORNEY'S LETTERS

In the second issue, Transcontinental contends the trial court erred by finding that two attorneys' opinion letters represented that no undue influence or duress was exerted by anyone in relation to the transaction and that the guaranty was a legal, valid, and binding obligation in accordance with its terms. One letter was from Jeffrey Agrest, 9033's transactional lawyer in the assumption transaction, and the other letter was from the law firm of Fragner & Pace, which represented the buyer in the assumption transaction.

Agrest's letter states that 9033 and Transcontinental requested him to deliver his opinion to ORIX and Wells Fargo knowing that Wells Fargo would rely on it. Agrest's letter states, "The Guaranty Agreement . . . is a legal, valid and binding obligation and agreement of Guarantor, enforceable in accordance with its terms." Agrest's letter does not mention undue influence or duress. The letter from Fragner & Pace states the firm assumed, "without any investigation," that "[t]here has not been any mutual mistake of fact or misunderstanding, fraud, duress or undue influence."

Transcontinental asserts that Agrest's letter was not admitted. This is incorrect. The record shows the letter was admitted for all purposes. Transcontinental also asserts that the trial court sustained an objection to ORIX's effort to elicit specific opinions contained in the letter. This is also incorrect. The trial court sustained an objection to ORIX's referring to the letter as setting forth Transcontinental's opinions instead of Agrest's opinions.

Transcontinental asserts that Fragner & Pace's letter was admitted for the limited purpose of showing that ORIX received the letter. This is correct. Transcontinental also complains of the trial court's reliance on an assumption without investigation in the letter as setting forth a

fact. We agree with Transcontinental that the evidence does not support the trial court's finding that the letters represented that there was no undue influence or duress exerted by anyone.

However, even if the trial court's finding was incorrect that the letters showed there was no duress, the error is not reversible unless it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a). Transcontinental asserts the lack of evidence to support this finding results in the court's finding number 28, that Transcontinental breached the guaranty, being unsupported by any evidence. We disagree. The evidence shows Transcontinental signed the guaranty and subsequently refused ORIX's demand that Transcontinental pay the judgment in the insurance litigation according to the terms of the guaranty. To the extent Transcontinental may be arguing that the finding does not support rejection of its duress defense, Transcontinental had the burden of proving the elements of that defense, including that ORIX had no right to require Transcontinental to provide a guaranty. *See Simpson v. MBank Dall., N.A.*, 724 S.W.2d 102, 109 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (elements of defense of duress include a threat to do something that the threatening party has no legal right to do). We have already determined the trial court did not err by determining that ORIX had the legal right to require Transcontinental to guarantee 9033's liability under any judgment rendered in the insurance litigation as a condition for ORIX's consent to the assumption. Accordingly, the trial court's consideration of the letters did not probably cause the trial court to render an improper judgment by rejecting Transcontinental's defense of economic duress.

We overrule Transcontinental's second issue.

## CONSIDERATION

In its third issue, Transcontinental contends there was no consideration given for its providing the guaranty. In *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex. 1997), the supreme court discussed valid consideration for a contract:

–14–

A contract must be based upon a valid consideration, in other words, mutuality of obligation. Consideration is a bargained for exchange of promises. Consideration consists of benefits and detriments to the contracting parties. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. A contract that lacks consideration, lacks mutuality of obligation and is unenforceable.

*Id.* at 408–09 (citations omitted). In this case, there was adequate consideration. There were benefits and detriments on both sides. By suffering the detriment of being subject to the guaranty, Transcontinental gained the benefit of being able to sell the property, which was operating at a loss, and get out from under the requirements of the loan documents. ORIX suffered the detriment of giving up the security of the property to collect any judgment in the insurance litigation, but gained the benefit of having a financially solvent entity guaranteeing payment of any judgment.

In this issue, Transcontinental challenges the following findings of fact by the trial court as supporting a finding that there was consideration for the guaranty:

18. At no time prior to the closing on the sale of the Property on or about May 26, 2005, did Transcontinental (a) express any opposition to ORIX's request that it sign the Guaranty, (b) assert that it was signing the Guaranty against its will, or (c) seek to negotiate another arrangement for backing up [9033's] liability.

19. At no time during the negotiations leading up to the May 25, 2005 closing did ORIX ever threaten Transcontinental that ORIX would do some act which ORIX had no right to do under the Loan Documents.

20. On or about May 25, 2005, the closing on the sale of the Property occurred, and all of the sales proceeds funded by the third party purchaser were transmitted to Transcontinental's bank account and were never received into any account of [9033].

31. By a preponderance of the evidence the Court finds that there was sufficient consideration received by Transcontinental in connection with its signing the Guaranty, by reason of the facts that Transcontinental (acting in connection with its subsidiary [9033]) was permitted to sell the Property at a profit, with all such profits being paid directly to Transcontinental at the closing in May 2005; and Transcontinental's obligations as Indemnitor under the Indemnity Agreement were all eliminated after the assumption of the Loan took place.

–15–

Findings 18 and 19 do not concern any benefit or detriment to the parties, so we conclude these findings are not relevant to the issue of consideration. However, even if finding 19 were relevant, Transcontinental argues that ORIX's threat not to consent to the sale unless it received a guaranty from a solvent person or entity for any potential judgment in its favor in the insurance litigation was not a right which ORIX had under the loan documents. As discussed in the first issue, ORIX had the right to require Transcontinental to guarantee 9033's liability under any judgment rendered in the insurance litigation as a condition for ORIX's consent to the assumption. Indeed, ORIX had the right to refuse to even consider the assumption as long as 9033 was in default under the requirements of the loan documents. As for finding 20, it was undisputed that the proceeds from the sale were transmitted directly to Transcontinental's bank account without passing through any account of 9033.

In its argument, Transcontinental also challenges two findings stating that the resolution of the impasse in negotiations for ORIX's consent to the assumption by having Transcontinental guarantee any judgment in the insurance litigation was first proposed by Transcontinental's counsel. However, whether the guaranty was first proposed by Transcontinental's counsel or ORIX's counsel is irrelevant to question of whether there was consideration for the guaranty.

Transcontinental's argument also asserts the evidence did not support the statements in finding 31 that Transcontinental "was permitted to sell the Property at a profit" and finding 21 that "Transcontinental made a profit of $841,033.87 from the sale of the property." Transcontinental asserts the evidence shows it had "net proceeds" of $841,033.87 from the sale but that it suffered a loss of $77,000 from owning the property. However, whether Transcontinental made a profit or suffered a loss from the sale is not the relevant issue for consideration. The question is whether there was a benefit. The evidence supports a finding that there was a benefit to Transcontinental from the sale of the property. The evidence shows the

property was only fifty percent leased and was consistently losing money. If the property had not sold, Transcontinental likely would have incurred continuing losses from the operation of the property. Therefore, the evidence supports a finding that the sale of the property, regardless of whether there was "profit" or merely "net proceeds," was a benefit to Transcontinental and provided consideration for the guaranty.

We overrule Transcontinental's third issue.

## BREACH OF THE NOTE BY ORIX AND WELLS FARGO

In its fourth issue, Transcontinental contends the trial court erred by finding that ORIX and Wells Fargo did not breach the note. Transcontinental alleged in its breach-of-contract action that ORIX and Wells Fargo breached the non-recourse provision of the note by attempting to enforce and satisfy the judgment awarded in their favor in the insurance litigation against Transcontinental, 9033's principal and parent.

Transcontinental's arguments under these issues are a restatement of its arguments in the first issue where it argued that ORIX did not have the right to condition consent to the assumption on Transcontinental providing a guaranty to secure any liability 9033 might have in the insurance litigation. As in the first issue, Transcontinental's arguments overlook the fact that ORIX and Wells Fargo agreed to give up the right to foreclose on the property to collect any judgment from the insurance litigation. The requirement that Transcontinental guarantee 9033's potential liability in the insurance litigation was a commercially reasonable, good faith condition enabling ORIX and Wells Fargo to consent to the assumption. Having rejected those arguments in the first issue, we likewise reject them here. We conclude the trial court did not err by determining ORIX and Wells Fargo did not breach the note. We overrule Transcontinental's fourth issue.

In its fifth issue, Transcontinental contends the trial court erred by determining that any damages Transcontinental asserted for breach of contract were impermissible. Having concluded that Transcontinental has not shown the trial court erred by determining ORIX and Wells Fargo did not breach the note, we need not address whether Transcontinental's asserted damages were permissible.

## COSTS AND EXPENSES

In its sixth issue, Transcontinental contends the trial court erred by determining that ORIX established grounds for recovering "miscellaneous professionals' fees" of $5,265.50 and "expenses" of $17,475.09. Transcontinental asserts these awards were improper and not supported by sufficient evidence.[5]

The "miscellaneous professionals' fees" were fees charged by ORIX's law firm for court runners, paralegals, a summer clerk, and a librarian. The "expenses" billed to ORIX by its law firm were for courier and postage costs, reproduction costs, binding expenses, courthouse parking, attorney's meals during the trial, and transcripts from the court reporter of a bench trial. These expenses were included in the charges billed by ORIX's law firm. The "expenses" also included expenses ORIX incurred for its expert witness's fee, document delivery, obtaining copies of depositions, trial notebook preparation, file processing and Bates stamping, and meals for ORIX's employees during their depositions.

The guaranty provided for ORIX's recovery of costs and expenses as follows:

> 1.7. <u>Payment of Expenses</u>. In the event that Principal [Transcontinental] should breach or fail to timely perform any provisions of this Agreement, Principal shall, immediately upon demand by Noteholder [Wells Fargo] or OCM [ORIX] pay Noteholder or OCM, as directed, all costs and expenses (including

---

[5] It appears the calculation of the amount of "expenses" awarded came from Exhibit 77, which was a summary of other exhibits containing ORIX's law firm's invoices and ORIX's own expenditures. The law firm's invoices listed the professionals who worked on the case, the amount of time spent, and the rate. The invoices also listed any expenses billed to ORIX. In Exhibit 77, the expenses listed in the invoices and ORIX's own expenditures were divided between "Expense" and "Cost" columns. The trial court's award of expenses of $17,475.09 is a combination of the law firm's expenses listed in the "Expense" column of Exhibit 77, $9,932.99, and ORIX's expenditures that were listed in the "Expense" column, $7,542.10. It appears that the trial court's award of "expenses" did not include any amounts in the "Cost" column on Exhibit 77.

–18–

court costs and reasonable attorneys' and paralegals' fees at all trial and appellate levels and in any bankruptcy proceedings) incurred by Noteholder or OCM in the enforcement hereof or the preservation of Noteholder's rights hereunder.

In *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470 (Tex. App.—Dallas 1987, writ denied), this Court considered the question of what expenditures may be awarded as attorney's fees. In that case, some parties sought to recover attorney's fees and expenses under section 17.50(c) of the Texas Business & Commerce Code, which permits the trial court to award "reasonable and necessary attorney's fees and court costs." *Id.* at 487. Also in that case, a lender sought to enforce a note, which provided that the holder of the note could recover "costs and expenses of suit." *Id.* at 488. As we stated in that case, "expenses incurred in prosecuting or defending a suit are not recoverable as costs or damages unless recovery of those items is expressly provided for by statute, is available under equitable principles, or is expressly provided for by contract." *Id.* at 486 (citations omitted). We determined that section 17.50(c) did not permit the award of expenses for delivery services, postage, travel, long-distance telephone charges, bond premiums, document reproduction, transcripts of testimony elicited during trial, office air-conditioning during the weekend, and secretarial overtime. *Id.* at 487. In considering the award of expenses under the note's provision for reasonable costs and expenses of suit, we concluded that provision did not permit the recovery of any costs or expenses other than "the usual costs and expenses ordinarily allowed under the general Texas rule in other types of litigation," that is, the usual costs of court. *Id.* at 488; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 31.007(b) (West 2015) (costs of court that may be awarded).

In this case, the guaranty states ORIX may recover "all costs and expenses (including court costs and reasonable attorneys' and paralegals' fees at all trial and appellate levels . . . ) incurred by [Wells Fargo] or [ORIX] in the enforcement hereof . . . ." Applying *Shenandoah* to this case, ORIX may recover as "costs and expenses" the items specifically listed in the

provision and the costs of court.  Under this provision, then, ORIX can recover its attorney's fees (which are unchallenged by Transcontinental), its paralegal fees, and its costs of court (which are also unchallenged).  Therefore, ORIX may recover the "miscellaneous professionals' fees" for the paralegals' fees, $4,772, but ORIX may not recover the fees for the court runners, summer clerk, and librarian because those fees were not specifically provided for in the guaranty.  We also conclude that ORIX may not recover any of the $17,475.09 for "expenses through the trial of this cause" because those expenses were not costs of court and were not specifically provided for in the guaranty.  We sustain Transcontinental's sixth issue.

## CONCLUSION

We modify the judgment to provide that ORIX is entitled to recover from Transcontinental miscellaneous professionals' fees in the amount of $4,772 and to delete the provision that ORIX is entitled to recover from Transcontinental "(iii) its expenses through the trial of this cause in the amount of $17,475.09."  In all other respects, we affirm the trial court's judgment.

140588F.P05

/Lana Myers/
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TRANSCONTINENTAL REALTY
INVESTORS, INC., Appellant

No. 05-14-00588-CV       V.

ORIX CAPITAL MARKETS LLC AND
WELLS FARGO BANK MINNESOTA,
N.A. A/K/A WELLS FARGO BANK
MINNESOTA, N.A. AS TRUSTEE FOR
THE MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 99CI, Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-15428-G.
Opinion delivered by Justice Myers. Justices
Fillmore and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

The award of "miscellaneous professionals' fees in the amount of $5,265.50" is
**REDUCED** to award $4,772.00; and the award of "expenses through the trial of
this cause in the amount of $17,475.09" is **DELETED**.

It is **ORDERED** that, as modified, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Orix Capital Markets LLC and Wells Fargo Bank
Minnesota, N.A. a/k/a Wells Fargo Bank Minnesota, N.A. as Trustee for the Mortgage
Pass-Through Certificates, Series 99CI recover their costs of this appeal and the full amount of
the trial court's judgment as modified from appellant Transcontinental Realty Investors, Inc. and
from International Fidelity Insurance Company of One Newark Center, 20th Floor, Newark, NJ
07102 as surety on appellant's supersedeas bond.

Judgment entered this 16th day of June, 2015.