**Malcolm L. SHAW, Appellant,**

v.

**COUNTY OF DALLAS, in its own Behalf and on Behalf of other Political Subdivisions whose Taxes are Collected by The Dallas County Tax Collector, The City of Dallas, The Dallas Independent School District, The Dallas County School Equalization Fund, The Dallas County Community College District, and The Parkland Hospital District, Appellees.**

No. 05–07–00366–CV.

Court of Appeals of Texas, Dallas.

April 9, 2008.

Rehearing Overruled May 12, 2008.

Mark Mueller, Dallas, for appellant.

Worthy W. Walker Walker, Clouse Dunn Hirsch, Sheila Fuqua Carter, Edward Lopez, Jr., Bridget Moreno, Linebarger, Goggan, Blair & Sampson, LLP, Dallas, David J. Kaplan, Geary, Porter & Donovan, Addison, for appellees.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice LANG–MIERS.

Appellant Malcolm [1] L. Shaw appeals the trial court's judgment denying his

---

**1.** Both appellees' brief and the trial court's judgment spell Mr. Shaw's first name as

claim for attorney's fees in a suit to collect delinquent ad valorem taxes.[2] For the following reasons, we affirm.

### BACKGROUND

In March 2002, Shaw obtained a personal judgment against Pete Anguiano. He filed an abstract of judgment in Dallas County that same year. Pete Anguiano paid the judgment, and Shaw executed a release of lien in April 2003. In 2004, appellees (the Taxing Authorities) sued Pete Anguiano, David Anguiano, and others to collect delinquent ad valorem taxes on property owned by Pete Anguiano located in Dallas County. They also sued Shaw and Bank of Texas, N.A. as lienholders having an interest in the property.

Shaw answered the Taxing Authorities' lawsuit, denied an ownership interest in the property and personal liability for the taxes, filed a cross-action for indemnification against the Anguianos, and filed a "cross-action" (counterclaim) against the Taxing Authorities for a declaration of non-liability and for attorney's fees under the Uniform Declaratory Judgments Act (UDJA). The case was set for trial in July 2005. Prior to trial, the Taxing Authorities moved for a continuance, arguing that they needed additional time to perfect service on the heirs of Pete Anguiano, who was deceased, and others. The trial court granted the continuance over Shaw's objection and reset the case for disposition in April 2006.

Before the April trial setting, the delinquent taxes and penalties on the property were paid and the Taxing Authorities moved to dismiss all claims against all defendants. They did not set a hearing on the motion. When the case was called for trial, the issues pending before the court were the Taxing Authorities' motion to dismiss and Shaw's counterclaim for attorney's fees.[3] The court heard evidence on Shaw's claim for attorney's fees and took the matter under advisement. After trial, Shaw filed an application for leave to file an amended pleading to conform to issues tried by consent. Shaw sought leave to allege that the Taxing Authorities violated rule 13 of the Texas Rules of Civil Procedure by filing a groundless lawsuit against him. He did not obtain a ruling on the motion. In January 2007, the trial court signed a final judgment in which it ordered the claim against Shaw dismissed with prejudice but denied Shaw's claim for attorney's fees. The trial court made findings of fact and conclusions of law, expressly stating that it considered Shaw's claim for attorney's fees under both rule 13 and the UDJA and concluded that Shaw failed to establish any claim or right to that relief.

In six issues on appeal, Shaw argues that the trial court erred when it failed to grant his motion for leave to file the amended pleading to conform to issues tried by consent, denied his claim for attorney's fees under rule 13 and the UDJA, and granted appellees' motion for continuance. He also contends that appellees' suit against him violated his constitutional right to due process.

"Malcom." However, appellees sued "Malcolm" Shaw, and Mr. Shaw spelled his first name as "Malcolm" in all court documents. Therefore, we will refer to "Malcolm."

2. The trial court sua sponte expressed concern about whether the county was protected by governmental immunity against Shaw's claim for attorney's fees and stated it would take the matter under advisement. The trial court entered final judgment against Shaw on the merits of his claim. We conclude, therefore, that the trial court impliedly concluded that it had jurisdiction. The jurisdictional issue is not raised on appeal.

3. Shaw nonsuited his cross-action for indemnification against the Anguianos.

### STANDARD OF REVIEW

■ A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the evidence at specific findings of facts, rather than at the judgment as a whole. *See Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex.App.-Amarillo 1998, pet. denied). A challenge to an unidentified finding of fact may be sufficient if we can fairly determine from the argument the specific finding of fact which the appellant challenges. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex.2005) (per curiam).

■ Findings of fact in an appeal from a nonjury trial carry the same weight as a jury verdict and are reviewed under the same standards that are applied in reviewing evidence to support a jury's verdict. *Walker v. Cotter Prop., Inc.*, 181 S.W.3d 895, 899 (Tex.App.-Dallas 2006, no pet.). In evaluating the legal sufficiency of the evidence to support a finding, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). The ultimate test is whether the evidence allows reasonable minds to reach the finding under review. *See id.* Anything more than a scintilla of evidence is legally sufficient to support a challenged finding. *Walker*, 181 S.W.3d at 899. When a party attacks the factual sufficiency of an adverse finding on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex.2001) (per curiam). We will set aside a finding for lack of factual sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and

unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam). We review a trial court's legal conclusions de novo. *Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.-Dallas 2007, no pet.). We evaluate those conclusions independently to determine whether the trial court correctly drew the conclusion from the facts. *Id.*

■ Additionally, in a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the testimony's weight. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.-Dallas 1989, writ denied). The trial court may believe one witness and disbelieve others and may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

### ISSUES TRIED BY CONSENT

In his first issue, Shaw argues that the trial court never formally ruled on his amended "cross-action" to conform to issues tried by consent, specifically his request for attorney's fees under rule 13. But Shaw also concedes that the trial court stated in its findings of fact and conclusions of law that it considered his rule 13 request for attorney's fees and concluded he failed to establish any right to that relief. We conclude that, although the trial court did not expressly grant Shaw's motion, it impliedly did so because it ultimately denied the relief he requested. *See* TEX.R.APP. P. 33.1(a)(2).

Shaw also argues that the court improperly denied his claim for attorney's fees in finding of fact 12, which states, "At trial, [Shaw] requested the recovery of attorneys fees for a frivolous filing by [the Taxing Authorities] under Rule 13, Texas Rules of Civil Procedure and for a declaratory finding that [the Taxing Authorities] frivolously included [Shaw] in the lawsuit without any legal basis or foundation."

After a review of the record, we conclude that finding of fact 12 does not, as Shaw contends, deny his claim for attorney's fees. Instead, it merely states the basis of Shaw's claim for attorney's fees and, as such, is an accurate statement of Shaw's pleadings.

We resolve Shaw's first issue against him.

## ATTORNEY'S FEES

In his second and third issues, Shaw argues that the trial court abused its discretion by failing to award him attorney's fees either as sanctions under rule 13 of the Texas Rules of Civil Procedure or under section 37.009 of the UDJA.[4] We construe these issues as challenges to the trial court's conclusion of law 3, which states, "[Shaw] has failed to establish any claim or right for declaratory relief or for sanctions under Rule 13, Texas Rules of Civil Procedure."

Shaw argues that the trial court should have imposed sanctions against the Taxing Authorities because there was no basis for suing him for personal liability for Pete Anguiano's delinquent taxes. He contends that the Taxing Authorities did not make a reasonable inquiry, as required by rule 13, before filing the lawsuit against him because the Taxing Authorities did not discover that he had released the lien against Pete Anguiano a year before this lawsuit was filed. He also contends that the prayer for relief in the Taxing Authorities' petition continued to request personal judgment against him even after the Tax-

ing Authorities amended their petition to specifically name Shaw as a defendant in rem only.[5] For the same reasons, Shaw contends that the court should have awarded him attorney's fees pursuant to his declaratory judgment action.

## A. Attorney's fees as sanctions under rule 13

■■■ Rule 13, Texas Rules of Civil Procedure, states

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment ... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction....

TEX.R. CIV. P. 13. A trial court may not impose sanctions under rule 13 "except for good cause." *Id.* "Groundless" in this context "means no basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law." *Id.* "Bad faith" means the conscious doing of a wrong for dishonest, discriminatory, or malicious purpose, and not simply bad judgment or negligence. *Elkins v. Stotts–Brown*, 103 S.W.3d 664, 668 (Tex.App.-Dallas 2003, no pet.). When

---

4. Shaw also argues that sanctions are appropriate and should have been awarded pursuant to sections 9.012 and 10.001 of the Texas Civil Practice & Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 9.012 (signing pleadings), 10.001 (frivolous pleadings and motions) (Vernon 2002). These issues were not preserved for our review. *See* TEX.R.APP. P. 33.1(a); *Greene v. Young*, 174 S.W.3d 291,

299 (Tex.App.-Hous. [1st Dist.] 2005, pet. denied).

5. The prayer for relief stated in relevant part, "Plaintiffs pray for personal judgment jointly and severally against the defendants, as appropriate by law, and for the imposition and collection of a lien on all other assets, real or personal owned by the defendants...."

determining whether rule 13 sanctions are proper, the trial court must examine the circumstances existing at the time the pleading was filed. *Id.* Trial courts must presume that pleadings, motions, and other papers are filed in good faith. TEX.R. CIV. P. 13. The party moving for sanctions has the burden of overcoming this presumption. *GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 731 (Tex.1993) (orig. proceeding).

■■■ We review a trial court's ruling on a motion for sanctions under rule 13 for an abuse of discretion. *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex.2004); *see Low v. Henry,* 221 S.W.3d 609, 614 (Tex.2007). In our review, we consider the entire record-the pleadings, the evidence, and the trial court's findings of fact and conclusions of law. *Am. Flood Research, Inc. v. Jones,* 192 S.W.3d 581, 583 (Tex.2006) (per curiam). We will not reverse that ruling unless we conclude that the trial court acted without reference to any guiding rules and principles. *Cire,* 134 S.W.3d at 839.

### B. Attorney's fees under UDJA

■■■ Section 37.009 of the UDJA states that a "court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). We will reverse a trial court's ruling on a request for attorney's fees under section 37.009 only if the court's decision is arbitrary, unreasonable, and without regard to guiding legal principles. *See Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Whether an award is equitable and just is "a matter of fairness in light of all the circumstances." *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.,* 148 S.W.3d 143, 162 (Tex.2004).

### C. Analysis

■■■ The record shows that the Taxing Authorities did not discover that Shaw had released the abstract of judgment against Pete Anguiano prior to filing this tax lawsuit and learned of it for the first time when Shaw offered the instrument into evidence at trial in April 2006. Shaw did not prove how the failure to discover the release was anything but negligence. And negligence will not support a finding of bad faith. *See Ziemian v. TX Arlington Oaks Apts., Ltd.,* 233 S.W.3d 548, 558 (Tex.App.-Dallas 2007, pet. struck). But even if the Taxing Authorities had discovered the release, Shaw did not prove that the release was intended to release the judgment he obtained against Pete Anguiano, because the release stated only that it released a specific piece of property: "Holder of the note and lien(s) acknowledges its payment and releases the *property* from all lien(s) held by holder of the note and lien(s)...." (emphasis added). It is undisputed that the property described as being released was not the same property that is the subject of this tax lawsuit.

Additionally, the evidence shows that after Shaw learned that the basis of this lawsuit against him was the abstract of judgment he filed against Pete Anguiano, he chose not to notify the Taxing Authorities about the release because "it was a matter of public record." Instead, Shaw waited until trial to offer that evidence.

Shaw also did not prove that the Taxing Authorities sought personal liability against him. The original petition specifically stated that Shaw was sued as a lienholder and cited the property records following his name: "(C2 2002104 8753 AJ)." To make it clear, the Taxing Authorities amended their petition to expressly name Shaw as an "(IN REM)" defendant only. Shaw has not shown how the prayer for

relief, which prays for personal judgment jointly and severally against all defendants "as appropriate by law," seeks to turn the in rem allegations into ones seeking personal liability against him as a lienholder. *See* Tex. Tax Code Ann. § 32.07(a) (Vernon Supp.2007) (property taxes are personal obligation of person who owns property); *Sadeghian v. City of Denton*, 49 S.W.3d 403, 406 (Tex.App.-Fort Worth 2000, pet. denied) (lienholder does not own legal title to property on which he holds lien and, thus, is not property owner for purposes of payment of property taxes). *See also In re City of Dallas*, 977 S.W.2d 798, 804 (Tex.App.-Fort Worth 1998, orig. proceeding) (prayer for relief must be read in context of other language in body of petition); *Doctor v. Pardue*, 186 S.W.3d 4, 16 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (substance of pleading gleaned from body of pleading and prayer for relief).

We conclude that Shaw did not rebut the presumption that the Taxing Authorities' lawsuit was filed in good faith, and the trial court did not abuse its discretion when it denied sanctions under rule 13. Additionally, under these circumstances,

we cannot conclude that the trial court abused its discretion by failing to award Shaw attorney's fees under the UDJA.

We resolve Shaw's second and third issues against him.

## JUDGMENT LIEN

Shaw labels his fourth issue: "The court erred in finding there was any or color of lien in Shaw's favor." In it, he states that he specifically attacks findings of fact 4, 6, 8, 9, and 10, and conclusions of law 1 and 2.[6] Shaw challenges these factual findings, but he does not state whether he challenges the legal or factual sufficiency of the evidence to support the factual findings. Additionally, he does not argue this issue under the appropriate standards of review, and he does not specify which part of his argument applies to which of the court's findings and conclusions. *See Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982). This issue is multifarious and inadequately briefed. Tex.R.App. P. 38.1(h); *see Watts*, 629 S.W.2d at 696. However, to the extent we understand the issue, we will address it.

---

**6.** Shaw specifically challenges:

*Findings of Fact*

4. [Shaw] was named as a defendant and had an interest in the Subject Property as a result of an Abstract of Judgment he caused to be filed against defendant Pete Anguiano;

6. On December 27, 2004, [Shaw] filed a general denial with the court;

8. Prior to the filing of the Original Petition, [Shaw] caused to be filed a Release of Lien with the Deed Records of Dallas County, Texas, said Release located at Volume 2003085, Page 06149 (the "Release of Lien");

9. The Release of Lien filed by [Shaw] released Pete Anguiano and property described as follows:

Lot 18, block 2/6427, TIMBERBROOK ADDITION, FOURTH INSTALLMENT, an Addition to tthe City of Dallas, Dallas

County, Texas, according to Plat THEREOF recorded in Volume 29, Page 145, of the Map Records of Dallas County, Texas;

10. Based on the foregoing, at the time that [the Taxing Authorities] filed the Original Petition, the Release of Lien filed by [Shaw] did not specifically release and refer to the Subject Property;

*Conclusions of Law*

1. [The Taxing Authorities] named [Shaw] as an interested party to the litigation in light of his Abstract of Judgment against Pete Anguiano. Therefore, the filing of Plaintiffs' Original Petition was not groundless or without legal merit or justification;

2. [The Taxing Authorities] acted in good faith in naming [Shaw] as in [sic] "In Rem" litigant to clarify that no personal liability was being sought against [Shaw]....

We first note that findings of fact 6, 8, 9, and 10 merely recite what the undisputed evidence showed. Therefore, we construe Shaw's fourth issue as essentially complaining that the trial court erred by concluding that he had an interest in the property (finding of fact 4) and that, as a result, the Taxing Authorities did not act in bad faith by suing him on that basis (conclusions of law 1 and 2).

The attorney for the Taxing Authorities testified that they sued Shaw because he filed an abstract of judgment against Pete Anguiano and, as a result, had an interest in the property subject to the tax lawsuit. And it was clear from the attorney's testimony that the Taxing Authorities only learned about the release when Shaw showed it to them during trial. Even then, the Taxing Authorities testified that they could not discern from reading the release whether it impacted their suit against Shaw. That is because, as we have noted, the release purported to release only the unrelated described property, and did not specifically state that it released the abstract of judgment.

In spite of this language, Shaw argues, "Inasmuch as there was but one judgment against Pete Anguiano in favor of Appellant Shaw, there can be but one satisfaction." And Shaw argues that when that debt was satisfied, the "Release of Lien applied to every real estate interest that Pete Anguiano had of record." Shaw did not raise this argument below, however, and it is not preserved for our review. Tex.R.App. P. 33.1.

For the same reasons that we addressed in Shaw's first and second issues, we conclude that the evidence is legally and factually sufficient to support the trial court's factual finding that Shaw had an interest in the property subject to the tax lawsuit as a result of filing the abstract of judgment against Pete Anguiano. We further conclude that the evidence is legally sufficient to support the trial court's conclusion that the Taxing Authorities' lawsuit against Shaw "was not groundless or without legal merit or justification."

We resolve Shaw's fourth issue against him.

### MOTION FOR CONTINUANCE

██ In his fifth issue, Shaw contends that the trial court abused its discretion by granting the Taxing Authorities' motion for continuance over his objection. A trial court, however, exercises broad discretion when deciding whether to grant or deny a motion for continuance. *See Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding); *Bank of Texas, N.A., Trustee v. Mexia*, 135 S.W.3d 356, 364 (Tex.App.-Dallas 2004, pet. denied). We will reverse for an abuse of discretion only when, after examining the entire record, we determine that the trial court's ruling was clearly arbitrary and unreasonable. *Mexia*, 135 S.W.3d at 364.

██ The Taxing Authorities moved for continuance prior to the first trial setting on the ground that they had not been able to obtain service of process on Pete and David Anguiano. Shaw argued that the Taxing Authorities did not exercise diligence in serving the defendants and offered no explanation for the failure to obtain service by other means. However, the record shows that service was attempted on these defendants but that they had moved and left no forwarding address. It also shows that Pete Anguiano was deceased and that the Taxing Authorities were attempting to locate his heirs. In that regard, the record shows that Shaw himself suggested to the Taxing Authorities that certain heirs of Pete Anguiano needed to be sued. As a result, the Taxing Authorities also sought a continuance

to amend their petition to add those heirs as defendants and to locate and serve them. Based on these circumstances, we cannot conclude that the trial court abused its discretion by granting the continuance.

We resolve Shaw's fifth issue against him.

### DENIAL OF CONSTITUTIONAL RIGHTS

In his sixth issue, Shaw argues that "the allegation of unfounded personal liability" and prayer for costs, attorney's fees, and abstractor's fees against him constituted a taking of his property without due process or just compensation. He contends that the Fourteenth Amendment to the U.S. Constitution guarantees him the right not to be sued on a groundless claim. However, Shaw did not raise this constitutional claim below. To preserve a complaint for appellate review, a party generally must present it to the trial court by timely request, motion, or objection, stating the specific grounds, and obtain a ruling. TEX.R.APP. P. 33.1(a). This rule applies to constitutional claims. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex.2003); *City of San Antonio v. Schauttet,* 706 S.W.2d 103, 104 (Tex.1986) (per curiam). Because Shaw did not raise this issue below, it presents nothing for our review.

We resolve Shaw's sixth issue against him.

### CONCLUSION

We resolve all of Shaw's issues against him and affirm the trial court's judgment.