**Opinion issued April 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-18-00310-CV**

———————————

**IN THE INTEREST OF S.E.W., A CHILD**

**On Appeal from the County Court at Law**
**Waller County, Texas**
**Trial Court Case No. 16-07-23814**

**MEMORANDUM OPINION**

Appellant Karen George-Baunchand (Baunchand) intervened in a child custody proceeding to recover her attorney's fees and costs. The trial court granted a default judgment in favor of Baunchand and awarded her $6,000 in attorney's fees. In three issues on appeal, Baunchand argues that the trial court erred by not awarding her the full amount of attorney's fees that she requested, and that trial court violated

her Fifth and Fourteenth Amendment rights by reducing the amount of attorney's fees. We affirm the trial court's judgment.

**Background**

In July 2016, Mother hired Baunchand to represent her in a child custody dispute. According to Baunchand, the child was visiting Father in Arizona for the summer and, despite Mother's and Father's agreement that the child would only stay in Arizona until mid-July, Father was refusing to return the child to Mother in Houston. Baunchand was employed by the International Center for Justice (ICFJ), a non-profit legal organization, when Mother retained her services. Among other things, Baunchand filed an original petition, an amended petition, and two applications for writs of habeas corpus during her representation.

On March 7, 2017, Baunchand filed a motion to withdraw as Mother's counsel because Mother was not communicating with her or paying her legal fees. On April 18, 2017, Baunchand and ICFJ filed a first amended petition in intervention seeking to recover $18,000 in attorney's fees and $80.00 in costs from Mother and Father. In support of the motion, Baunchand attached her affidavit and two billing statements that ICFJ had sent to Mother documenting the legal services that Baunchand performed between July 1, 2016 and December 4, 2016. In her affidavit, Baunchand averred that she regularly practiced immigration and family law in Texas and was Mother's attorney of record in the underlying Suit Affecting the Parent-

Child Relationship (SAPCR). Baunchand stated in her affidavit that although her normal and customary fees in such cases is $500 per hour, she reduced her rate to $250 per hour based on Mother's financial status. She further averred that she had deducted time spent on phone calls and text messages, and was only seeking fees for 72 hours of work.

On June 16, 2017, the trial court held a hearing on Mother's and Father's Agreed Order in this case and Baunchand's request for attorney's fees. The hearing was attended by Father's attorney, the child's amicus attorney, and Baunchand. Mother did not appear at the hearing.

Baunchand testified at the hearing in support of her request for $18,000 in attorney's fees. Specifically, Baunchand testified that Mother hired her in July 2016 and they executed a formal contract for services at that time. She handed the trial judge the original contract during the hearing. The contract, however, was not admitted into evidence during the hearing or attached to Baunchand's affidavit. Although Baunchand attached a copy of the purported agreement to her appellate brief, we cannot consider it for purposes of her appeal because the document is not included in the appellate record. *See Samara v. Samara*, 52 S.W.3d 455, 459 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (holding appellate courts cannot consider documents attached to briefs that do not appear in appellate record).

Baunchand testified that although her normal and customary charge is $450 an hour,[1] she reduced her rate to $250 an hour because Mother claimed to be indigent. She testified that she spent approximately 94 to 112 hours on the case, and that she reduced her time to 72 hours because of Mother's financial status.[2] "These hours were reasonable and necessary and -- I charge less than the customary rate of 350, my rate was 250 an hour.[3] And I reduced everything that I could." She explained that although Mother made unreasonable demands on her time, she did not charge Mother for the time she spent responding to Mother's excessive text messages or late-night phone calls. She also did not charge Mother for copies or faxes.

Baunchand testified that Mother stopped making payments in November 2016 and stopped communicating with Baunchand in November or December 2016.

[1] Baunchand had averred in her affidavit that her customary rate was $500 per hour and she argues on appeal that $500 is her customary rate in cases like this one.

[2] On appeal, Baunchand argues that Mother lied when she claimed that she was indigent and that "[t]he final judgment failed to take [this fact] into account." Baunchand also attaches supporting documentation to her appellate brief. First, Baunchand does not appear to have challenged Mother's indigency claims in the trial court or argued that the court should take Mother's true financial status into consideration when determining the amount of reasonable attorney's fees in this case. *See generally Garcia v. Alvarez*, 367 S.W.3d 784, 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Second, the documents attached to Baunchand's brief are not included in the appellate record and, therefore, we cannot consider them for purposes of appeal. *See Samara v. Samara*, 52 S.W.3d 455, 459 (Tex. App.— Houston [1st Dist.] 2001, pet. denied) (holding appellate courts cannot consider documents attached to briefs that do not appear in appellate record).

[3] When the trial judge asked Father's counsel "what the average ordinary fee per hour is in Waller County for an attorney in a comparable matter, counsel responded, "My guess would be around 350, 400. 300 to -- 300 to 400."

4

Baunchand, however, continued to participate in the case and attended approximately six hearings after December 2016 and a mediation because she was still Mother's attorney of record. Baunchand did not bill Mother for any of those hours.

When the trial judge asked her about her relationship with ICFJ, Baunchand told the court that she was working for ICFJ when Mother hired her in July 2016. According to Baunchand, who was also on ICFJ's board of directors, the non-profit lost its 501(c)(3) tax status in August 2016 and she stopped working for them and resigned her directorship in November or December 2016. When the trial judge asked who paid her legal fees when she was employed by ICFJ, Baunchand told the court, "the client is paying the nonprofit. If the client doesn't pay the nonprofit, I do not get paid." Baunchand testified that she had not been paid by ICFJ for the services she provided in this case. Baunchand also testified that she did not execute a new contract with Mother after Baunchand left ICFJ because Baunchand believed that the original July 2016 agreement was sufficient.

Baunchand also testified about some of the specific services she performed in this case. Specifically, Baunchand testified that after her first meeting with Mother on July 3, 2016, she reviewed the text messages and e-mails that Mother and Father had exchanged, along with other documents that Mother had sent to her, and she "prepared an emergency petition, which is a writ of habeas for return of the child."

5

The first ex parte hearing on Mother's application for a writ of habeas corpus and request for temporary orders was recessed to allow Mother to amend her application. After the application was amended, the court reconvened the hearing and issued temporary orders directing Father to return the child. Baunchand stated that after she filed the writ she "also filed an original SAPCR [on July 12th] at the request of the visiting judge." Baunchand billed Mother for two hours for each hearing.

At that point, Father's counsel questioned Baunchand on voir dire.

MR. SHORT: Is it your testimony under oath, ma'am, that a judge advised you what to do as a lawyer about filing SAPCRs and that sort of thing? Is that what you're telling this -- His Honor?

MS. BAUNCHAND: A visiting judge gave me some instructions concerning the writ and also the SAPCR.

MR. SHORT: Visiting judge instructed you [that] you had the wrong pleadings, right?

MS. BAUNCHAND: She did not.

Baunchand also billed Mother for the six hours she spent preparing and filing a second writ of habeas corpus on July 20th. The judge asked Baunchand, "And it took six hours to repeat the information that was in the first habeas corpus into another habeas corpus?" Baunchand responded, "The [visiting] judge struck through some of the first habeas corpus and gave me specific instructions concerning the second one."

Father's counsel also challenged the necessity of the writs and told the trial court that Baunchand had "started the case by sending kidnapping allegations to [Father's] NFL team" and "so a huge amount of the time and effort in this was as a result of what I believe to be Rule 13 sanctionable actions." Father's counsel argued that:

> A simple filing of a petition to begin this suit with an hour's billing and a 106 is -- would have cost virtually nothing instead of suggesting that you needed to go through all this drama. And then from a nonprofit organization, which makes it even worse, Judge. I can't imagine that attorney's fees would be over 3 or $400.

The trial judge noted that the contract Baunchand had handed him set the minimum fee in this case at $20,000.

Baunchand denied making kidnapping allegations and testified that her statements were based on the text messages between Mother and Father that Mother had provided to Baunchand. Baunchand testified that she only filed the writs because Father was refusing to return the child. The trial judge disagreed with Baunchand's characterization of the evidence and noted that he had reviewed the text messages and the message "did not say that [Father] was not going to return the child."

Baunchand also testified that she "attended numerous hearings concerning this case" and stated that there were "quite a few continuances" because Father was not present at any court hearings, despite assurances that he would attend at least two of the hearings, and his counsel filed numerous motions for continuance. Among

7

other charges, Mother was billed four hours for a hearing on child support on August 18, 2016 and four hours for another hearing on September 3, 2016. Baunchand explained that the August 18, 2016 hearing lasted for four hours because Mother was late and there were questions about whether she had been given notice of the hearing.

Father's counsel questioned the necessity of a hearing on child support because the parties had agreed that Father would pay $1,700 per month in child support. He also told the trial court that some of the hearings had to be continued or reset because Baunchand had attempted to serve Father incorrectly and had failed to give proper notice.

Baunchand's paralegal also testified about the numerous text messages and phone calls that Mother made to Baunchand that Mother was not billed for.

At the end of the hearing, the trial court accepted Mother's and Father's Agreed Order in Suit Affecting Parent-Child Relationship. The trial court further stated that after reviewing and hearing Baunchand's testimony regarding her request for attorney's fees, the court ordered Mother to pay Baunchand $6,000 in attorney's fees, i.e., $7,500 minus the $1,500 that Mother had already paid to Baunchand.

## Attorney's Fees

In her first and second issues, Baunchand argues that the trial court erred by not awarding her $18,000 in attorney's fees, which is the full amount she requested.

## A.    Standard of Review

Baunchand argues on appeal that she has a right to recover her attorney's fees in this case pursuant to section 106 of the Texas Family Code and Chapter 38 of the Texas Civil Practice and Remedies Code.[4] *See* TEX. FAM. CODE § 106.002(a) (authorizing award of reasonable attorney's fees in SAPCR proceeding); TEX. CIV. PRAC. & REM. CODE § 38.001(8) (authorizing award of attorney's fees if claim is for "an oral or written contract"). We review the amount of an award of attorney's fees under both Chapter 38 and section 106 for abuse of discretion. *See Guimaraes v. Brann*, 562 S.W.3d 521, 551 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (stating trial courts have broad discretion to award reasonable attorney's fees and expenses in SAPCRs); *see also Siam v. Mountain Vista Builders*, 544 S.W.3d 504, 510 (Tex. App.—El Paso 2018, no pet.) (stating trial court has discretion to determine amount of reasonable and necessary attorney's fees under Chapter 38).

As the party seeking fees, Baunchand bore the burden to show her attorney's fees were reasonable and necessary. *See Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010). The reasonableness of attorney's fees is a question of fact and an appellate court may not substitute its judgment for that of the factfinder. *Smith v.*

---

[4]    Although Baunchand's appellate brief focuses almost exclusively on her right to recover attorney's fees under Chapter 38, she does not appear to have raised this point in the trial court. Nevertheless, we will assume without deciding for purposes of this appeal that Baunchand is entitled to recover her fees under Chapter 38.

*Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009). A reasonable fee is one that is not excessive or extreme, but rather moderate or fair. *Garcia*, 319 S.W.3d at 642. A request for attorney's fees may be found unreasonable even if it is supported by uncontradicted evidence. *See Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Factors that trial courts should consider when determining the reasonableness of a fee include: the time, labor and skill required to properly perform the legal service; the novelty and difficulty of the questions involved; the customary fees charged in the local legal community for similar legal services; the amount involved and the results obtained; the nature and length of the professional relationship with the client; and the experience, reputation and ability of the lawyer performing the services. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). "Trial judges can [also] draw on their common knowledge and experience as lawyers and as judges in considering the testimony, the record, and the amount in controversy in determining attorney's fees." *McMahon v. Zimmerman*, 433 S.W.3d 680, 693 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quoting *Protect Envtl. Servs. v. Norco Corp.*, 403 S.W.3d 532, 543 (Tex. App.—El Paso 2013, pet. denied)).

**B.  Analysis**

Baunchand argues that the trial court erred by not awarding her the full amount of attorney's fees because her "hourly rate was half the going rate in the community/locality" and, therefore, her "attorney fees and cost were more than reasonable." The amount of an attorney's rate, however, is only one factor that a court may consider when evaluating the reasonableness and necessity of attorney's fees in a case.

Here, Baunchand requested $18,000 for six months of work in a child custody dispute. Although Baunchand presented evidence in support of her request, the trial court was not required to take her testimony at face value and award her all the attorney's fees she was requesting. *See Ragsdale*, 801 S.W.2d at 882 (stating that request for attorney's fees may be found unreasonable even if it is supported by uncontradicted evidence).

The hearing testimony raises questions about the reasonableness and necessity of some of the legal services that Baunchand provided to Mother, including the fourteen hours she spent preparing two writs of habeas corpus, and the hearings held on the writs. The record reflects that Baunchand began the case by filing an application for writ of habeas corpus, but the writ needed to be amended before the court considered it. After Baunchand filed the amended writ, she "also filed an original SAPCR at the request of the visiting judge." The visiting judge also gave

Baunchand specific instructions with regard to her second writ. Father's counsel disputed that the writs were necessary and argued Baunchand should have filed a SAPCR petition first, which "would have cost virtually nothing." Although Baunchand argued that the writs were necessary because Father was refusing to return the child, the trial judge disagreed with her assessment of the evidence and noted that he had reviewed the text messages and the messages "did not say that [Father] was not going to return the child." The trial judge also expressed concern regarding the amount of time Mother was charged for Baunchand's preparation of the second writ ("And it took six hours to repeat the information that was in the first habeas corpus into another habeas corpus?") and the amount of time Mother was charged for various hearings.

Baunchand requested $18,000 in attorney's fees for six months' work in this child custody dispute; the trial court awarded her $6,000 in fees. Considering the evidence presented during the hearing that contradicts or undermines Baunchand's testimony regarding the reasonableness and necessity of her fees, we conclude the trial court's award of $6,000 in attorney's fees to Baunchand was not arbitrary or unreasonable or without reference to guiding principles.

We overrule Baunchand's first and second issues.

## Constitutional Violations

In her third issue, Baunchand argues that the trial court violated her Fifth and Fourteenth Amendment rights by reducing the amount of attorney's fees. Baunchand, however, did not raise her constitutional claims below. To preserve a complaint for appellate review, a party generally must present it to the trial court by timely request, motion, or objection, stating the specific grounds, and obtain a ruling. TEX. R. APP. P. 33.1(a). This rule applies to constitutional claims. *See In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *Shaw v. County of Dallas*, 251 S.W.3d 165, 174 (Tex. App.—Dallas 2008, pet. denied). Because Baunchand did not raise this issue below, it presents nothing for our review. *See In re L.M.I.*, 119 S.W.3d at 710–11; *Shaw*, 251 S.W.3d at 174.

We overrule Baunchand's third issue.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Justices Lloyd, Kelly, and Hightower.

13