**Affirm and Dismiss and Opinion Filed June 16, 2022**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00255-CV

## IN RE GUARDIANSHIP OF JOYCE MARGOL, AN ALLEGED INCAPACITATED PERSON

**On Appeal from the Probate Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. PR-20-02238-2**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

Joyce Margol is an incapacitated person. She has three children: appellant Stuart Margol, appellee Marla Margol, and Debra Margol Baker.[1] Stuart acted as Joyce's agent pursuant to powers of attorney that Joyce executed before becoming incapacitated and also as a trustee of the Melvin Margol Family Trust. After disputes arose between Stuart and Marla, Marla filed an Application for the Appointment of a Temporary and Permanent Guardian of the Person and Estate of Joyce Margol. Stuart contested Marla's application and filed his own application for a guardianship.

---

[1] We will refer to Joyce and her children by their first names.

The probate court denied Marla's application for appointment of a temporary guardian of the person and appointed a temporary guardian of the estate; the court also suspended all powers of attorney signed by Joyce except for her medical power of attorney. Marla then filed a motion in limine pursuant to Texas Estates Code section 1055.001(b). In the motion, Marla asserted Stuart's interests were adverse to Joyce's interests and he lacked standing to contest the creation of a guardianship for Joyce or to file an application to be appointed guardian. The court held a two-day evidentiary hearing on the motion in limine before granting the motion. The probate court also appointed a permanent guardian of the person and a permanent guardian of the estate. This appeal followed.

In four issues, Stuart argues: (1) the order appointing the temporary guardian is void; (2) the probate court abused its discretion by ordering a permanent guardianship over the Estate and Person of Joyce Margol without obtaining necessary jury findings; (3) the probate court erred by ordering a permanent guardianship without legally sufficient evidence; and (4) the probate court erred by granting Marla's motion in limine and thereafter excluding Stuart from the guardianship proceedings. We affirm the probate court's order granting Marla's motion in limine, and we dismiss the remainder of this appeal for lack of subject matter jurisdiction.

## A. Motion in Limine Proceedings[2]

We begin with Stuart's fourth issue because it is dispositive of this appeal.

Marla's motion in limine argued that Stuart's interests were adverse to Joyce's interests and, as a result, Stuart lacked standing to contest the appointment of a guardian. During the two-day evidentiary hearing on Marla's motion, the court heard witness testimony and considered several exhibits. The probate court's order granting Marla's motion in limine states that Stuart may not file an application to create a guardianship for Joyce, contest the creation of a guardianship for Joyce, contest the appointment of a person as Joyce's guardian, or contest an application for complete restoration of Joyce's capacity or modification of the guardianship; additionally, the court ordered all pleadings filed by Stuart be dismissed for lack of subject matter jurisdiction.

## B. Findings of Fact

The probate court entered findings of fact and conclusions of law, which include:

> 5. Upon the death of the Protected Person's husband, Melvin Margol, in 1992, a testamentary trust known as the Melvin Margol Family Trust for the benefit of the Protected Person was established under the Last Will and Testament of Melvin Margol (the "Trust").
> 6. The Protected Person's three children, Stuart, [Debra], and Marla Margol, are the Co-Trustees of the Trust, designated to act by majority decision.
> 7. Stuart controlled the Trust since its inception by transferring the Protected Person's assets, including both real and

---

[2] In the context of a guardianship proceeding, a motion in limine is a motion challenging a person's standing. *See* TEX. EST. CODE ANN. § 1055.001(c).

personal property, into and out of the Trust without the knowledge and consent of the other Co-Trustees.

8. Stuart depleted the Trust by unilaterally deeding all real property and transferring all cash assets out of the Trust to the Protected Person, individually, without the knowledge or consent of the other Co-Trustees, after which Stuart had sole control of the Protected Person's assets as agent under her Powers of Attorney. The distribution from the Trust was premature.

9. The terms of the Trust do not grant Stuart, as Trustee, the authority to loan money from the Trust to himself, make gifts from the Trust to himself, or perform any other act of self-dealing.

10. The terms of the Powers of Attorney do not grant Stuart the authority to loan money from the Protected Person's Estate to himself, make gifts from the Protected Person's assets to himself, or perform any other act of self-dealing. In contrast, Stuart's tax professional testified that Stuart had the authority to self-deal. The Powers of Attorney do not allow for self-dealing.

11. As Trustee of the Trust, Stuart borrowed $135,000 from the Trust, beginning in October 2011, without any security. No documentation was offered to support the loans, despite Stuart's description of himself as an expert at real estate transactions and managing businesses. The loans benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

12. As agent under the Protected Person's Powers of Attorney, Stuart borrowed $250,000 from the Protected Person's Estate, beginning in August 2013, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

13. As agent under the Protected Person's Powers of Attorney, Stuart borrowed $20,000 from the Protected Person's Estate, beginning in January 2014, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

14. As agent under the Protected Person's Powers of Attorney, Stuart borrowed $300,000 from the Protected Person's Estate, beginning in November 2016, without any security. No documentation was offered to establish the terms of the loan. The loan benefitted Stuart personally. No evidence was offered to show the Protected Person's benefit.

15. In total, Stuart took over $705,000 in personal, unsecured, and undocumented loans from the Trust and the Protected Person's Estate.

16. Although the $705,000 in loans taken by Stuart appear to have been paid back, there was no documentation to support the loans or to define the repayment obligations.

. . . .

18. Over $10,000 in interest on the loans taken by Stuart remains unaccounted for.

19. There is no evidence that Stuart paid the Protected Person back for any profits gained or losses sustained from the loans.

20. In 2008, Stuart, as Trustee of the Trust, sold a piece of residential real property owned by the Trust to Stuart's business partner, Amer Ramic, without the knowledge or consent of the other Co-Trustees.

21. From 2010 to 2020, Stuart, as Trustee of the Trust and agent under the Protected Person's Powers of Attorney, used approximately $378,960.66 from the Trust and the Protected Person's Estate to pay off credit cards titled in Stuart's individual name or in the names of entities controlled by Stuart, and there has been no evidence presented that the purchases made with those credit cards were for the benefit of the Protected Person.

. . . .

32. Stuart was acting for his own benefit as Trustee of the Trust and agent under the Protected Person's Durable and General Powers of Attorney, rather than acting for the benefit and best interest of the Protected Person.

(footnotes omitted)

### C. Motion in Limine Legal Standard

"[W]hether a party has standing to participate in a guardianship proceeding is a question of law." *In re Guardianship of Miller*, 299 S.W.3d 179, 188 (Tex. App.—Dallas 2009, no pet.) (en banc); *see also In re Guardianship of E.M.D.*, No. 11-20-00042-CV, 2020 WL 6193990, at *3 (Tex. App.—Eastland Oct. 22, 2020, pet. denied) (mem. op.). Questions of standing implicate the court's subject matter

jurisdiction over a case, and we review questions of jurisdiction de novo. *See Bickham v. Dallas Cnty.*, 612 S.W.3d 663, 668 (Tex. App.—Dallas 2020, pet. denied). "When standing has been conferred by statute, the statute itself should serve as the proper framework for a standing analysis." *Guardianship of E.M.D.*, 2020 WL 6193990, at \*3.

Section 1055.001(a) of the Texas Estates Code, titled "Standing to Commence or Contest Proceeding," states that, except as provided in subsection (b), any person has the right to commence a guardianship proceeding or appear and contest a guardianship proceeding or the appointment of a particular person as a guardian. *See* TEX. EST. CODE ANN. § 1055.001(a). However, a person who has interests adverse to a proposed ward or incapacitated person may not:

> (1) file an application to create a guardianship for the proposed ward or incapacitated person;
> (2) contest the creation of a guardianship for the proposed ward or incapacitated person;
> (3) contest the appointment of a person as a guardian of the proposed ward or incapacitated person; or
> (4) contest an application for complete restoration of a ward's capacity or modification of a ward's guardianship.

*Id.* § 1055.001(b). A court "shall determine by motion in limine the standing of a person who has an interest that is adverse to a proposed ward or incapacitated person." *Id.* § 1055.001(c). The estates code does not define what constitutes an interest adverse to the proposed ward; however, Black's Law Dictionary defines

"adverse interest" as "an interest that is opposed or contrary to that of someone else." Adverse interest, BLACK'S LAW DICTIONARY (11th ed. 2019).

Section 1055.001 was designed to "protect the well-being of the individual." *Guardianship of E.M.D.*, 2020 WL 6193990, at *3 (quoting *In re Guardianship of Bernsen*, No. 13-17-00076-CV, 2018 WL 2355198, at *9 (Tex. App.—Corpus Christi–Edinburgh May 10, 2018, no pet.) (mem. op.)); *see also* TEX. EST. CODE ANN. §§ 1001.001(a) (a court may appoint a guardian over an incapacitated person "only as necessary to promote and protect the well-being of the incapacitated person").

Evidence sufficient to support a finding that a person is indebted to the proposed ward may not be sufficient to establish an adverse interest. *See Guardianship of Miller*, 299 S.W.3d at 189 (evidence that applicant is indebted to the ward might disqualify applicant from serving as guardian, but does not automatically rise to the level of an adverse interest sufficient to divest person of standing); *Betts v. Brown*, No. 14-99-00619-CV, 2001 WL 40337, at *4 n.2 (Tex. App.—Houston [14th Dist.] Jan. 18, 2001, no pet.) (not designated for publication) ("the legislature contemplated that a person indebted to the proposed ward would be allowed to participate in the guardianship proceeding, but may be disqualified to serve as guardian"). However, evidence that a person engaged in self-dealing to the detriment of the proposed ward may establish an adverse interest. *See In re*

*Guardianship of Olivares*, No. 07-07-0275-CV, 2008 WL 5206169, at \*2 (Tex. App.—Amarillo Dec. 12, 2008, pet. denied) (mem. op.).

### D. Sufficiency of the Evidence Legal Standard

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue for which they do not have the burden of proof, the party must demonstrate no evidence supports the adverse finding. *Airpro Mobile Air, LLC v. Prosperity Bank*, 631 S.W.3d 346, 350 (Tex. App.—Dallas 2020, pet. denied) (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011)). We will sustain a no evidence complaint only if the record reveals (a) the complete absence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. *Id.*

When, as here, a trial court makes findings of fact, those findings have the same force and effect as a jury verdict. *See id.* Consequently, unchallenged findings of fact are binding on this Court unless the contrary is established as a matter of law or no evidence supports the finding. *Id.* Although a party appealing from a bench trial in which the trial court made findings of fact should direct its attack on the sufficiency of the evidence at specific findings of fact rather than at the judgment as a whole, a challenge to an unidentified finding may be sufficient if we can fairly determine from the argument which specific finding the appellant challenged. *Id.* at

–8–

351, n.4 (citing *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied)).

### E.    Analysis

Stuart argues the trial court applied the wrong standard for determining that he was adverse to Joyce. He posits the correct standard is found in two sentences that he quotes from *In re Thetford*, 574 S.W.3d 362, 379 (Tex. 2019) (orig. proceeding) (Hecht, J., concurring):

> We would hold that for a guardianship proceeding to be adverse, the applicant's interests must be adverse to the proposed ward's objectives or interests as the proposed ward would have defined them when she had capacity. In the absence of evidence of how the proposed ward would have defined her interests, we think adversity exists when the applicant's interests would not promote and protect the proposed ward's well-being.

*Id.* As a concurring opinion, these sentences do not present binding authority. *See Nabelek v. Bradford*, 228 S.W.3d 715, 720 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also In re Commitment of Jones*, No. 02-18-00019-CV, 2022 WL 325390, at *6 (Tex. App.—Fort Worth Feb. 3, 2022, pet. denied) (op. on en banc reconsideration). We conclude the concurring opinion on which Stuart relies does not present the current standard for determining whether a person has interests adverse to a proposed ward under section 1055.001. Further, having reviewed *Thetford*, nothing in the majority opinion conflicts with the legal authorities we have cited.

Stuart also challenges the evidence supporting finding of fact number 19, which states: "There is no evidence that Stuart paid the Protected Person back for any profits gained or losses sustained from the loans." Even if we assume for purposes of this appeal that the record contains no evidence to support finding of fact number 19, the trial court's copious unchallenged[3] findings of fact, quoted extensively above, are supported by the record and are sufficient to show Stuart engage in repeated acts of self-dealing. Stuart's acts of self-dealing are sufficient to establish his interests were adverse to Joyce's interests. *See Olivares*, 2008 WL 5206169, at *2. Accordingly, we conclude the probate court did not err by finding Stuart lacks standing pursuant to section 1055.001(b) of the estates code and by granting Marla's motion in limine. We overrule Stuart's fourth issue.

### F.    Conclusion

Because Stuart lacks standing under section 1055.001(b), Stuart also lacks standing to challenge any of the probate court's other orders. *See Guardianship of Bernsen*, 2019 WL 3721339, at *10 (citing *In re Estate of Denman*, 270 S.W.3d 639, 642 (Tex. App.—San Antonio 2008, pet. denied) (an appealing party does not have standing to complain of errors that merely affect the rights of others); *Guardianship*

---

[3] In his argument supporting his fourth issue, Stuart's brief also states: "Stuart, Debra and Ann Rule, CPA all provided evidence of how the proposed ward would have defined her interests, which were consistent with how Stuart was managing Joyce's Estate. Therefore, the trial court erred by finding Stuart adverse to Joyce, without standing, and granting Marla's Motion in Limine. All findings or conclusions by the Court otherwise are erroneous and ignore the intent of Stuart and Joyce." (internal citation omitted). These sentences are insufficiently specific to challenge any of the trial court's findings of fact. *See Airpro Mobile Air*, 631 S.W.3d at 351 n.4 (citing *Shaw*, 251 S.W.3d at 169).

*of Benavides*, No. 04-13-00197-CV, 2014 WL 667525, at \*1 (Tex. App.—San Antonio Feb. 19, 2014, pet. denied) (mem. op.)). Accordingly, this Court lacks jurisdiction to consider Stuart's other arguments, and we must dismiss this appeal. *See Guardianship of E.M.D.*, 2020 WL 6193990, at \*2 (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008); *Guardianship of Bernsen*, 2018 WL 2355198, at \*1). We do not address Stuart's first, second, or third issues. *See* TEX. R. APP. P. 47.1.

We affirm the probate court's order granting Marla's motion in limine, and we dismiss the remainder of this appeal for lack of subject matter jurisdiction.

210255f.p05

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN RE GUARDIANSHIP OF
JOYCE MARGOL, AN ALLEGED
INCAPACITATED PERSON

No. 05-21-00255-CV

On Appeal from the Probate Court
No. 2, Dallas County, Texas
Trial Court Cause No. PR-20-02238-2.
Opinion delivered by Justice Nowell.
Justices Partida-Kipness and
Pedersen, III participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the probate court's order granting Marla Margol's motion in limine, and we **DISMISS** the remainder of this appeal for lack of subject-matter jurisdiction.

It is **ORDERED** that appellee Marla Margol recover her costs of this appeal from appellant Stuart Margol.

Judgment entered this 16th day of June, 2022.