**REVERSE and REMAND in part; AFFIRM in part; and Opinion Filed March 9, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-01558-CV**
_____

**YA QIN TONG AND STEPHEN CHU, Appellants**
**V.**
**NATIONSTAR MORTGAGE LLC, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-04255-2015**

## MEMORANDUM OPINION ON REHEARING

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Molberg

We deny appellee Nationstar Mortgage LLC's motion for rehearing and, on

our own motion, withdraw our November 28, 2022 memorandum opinion and vacate

the judgment of that date. This is now the opinion of the Court.

In this home equity loan dispute, after a bench trial, the trial court entered a

take nothing judgment on the claims brought by appellants Ya Qin Tong and Stephen

Chu, who are married,[1] against appellee Nationstar Mortgage LLC and awarding

---

[1] The fact of Tong and Chu's marriage was disputed below, but the trial court found that the two were married prior to July 6, 2007. No party has challenged this finding on appeal.

Nationstar a total of $683,572.24 with post-judgment interest and a foreclosure of its lien on the property in satisfaction of the judgment.[2]

In five issues, based on what they describe as a constitutionally non-compliant lien, appellants ask us to reverse the trial court's judgment, order the trial court to vacate the final judgment and order of foreclosure, and remand the case back to the trial court to enter a judgment in their favor.

For the reasons that follow, we reverse, with respect to both appellants, the portions of the trial court's judgment allowing foreclosure and render judgment that Nationstar take nothing by way of those claims or the attorney's fees claims associated with foreclosure; reverse the amount of the attorney's fee determination against Chu on Nationstar's note claim and remand to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees due Nationstar on its suit on a note against Chu; and, in all other respects, affirm the trial court's judgment.

## I. BACKGROUND

In October 2015, Tong sued Nationstar and another party, Jane Doe,[3] regarding property Tong claimed is a homestead she and Chu shared as husband and

[2] *See* TEX. R. CIV. P. 309. The judgment stated this total amount consisted of $605,602.20 for the amount due and owing under the note, $75,151.96 for attorney's fees and expenses as allowed under the note and security instrument, and $2,818.00 in taxable court costs. The court awarded post-judgment interest at the yearly interest rate under the note of 7.375 percent.

[3] Tong's original petition included a negligence claim against Doe, a person identified as "the loan officer who was responsible for filling out the forms, deed of trust, note, and for confirming and verifying the information contained therein, which resulted in the encumbrance currently on [Tong's] [p]roperty."

wife since on or about February 16, 2007. Tong claimed that on July 6, 2007, without her knowledge or consent, Chu obtained a $330,000 home equity loan from Metro Bank, N.A. and executed a security instrument purportedly establishing a first lien against the property. Tong identified Nationstar as the current servicer and purportedly the current holder of the deed of trust on the property.

Against Nationstar, Tong asserted claims to quiet title and for declaratory judgment, seeking, among other things, a judgment declaring that the deed of trust in favor of Metro Bank, N.A. is void and unenforceable against the property and declaring that the cloud on the property's title is an invalid or unenforceable infringement because the loan violates article XVI, section 50(a)(6)(A) of the Texas Constitution and is void under section 50(a)(6)(Q)(xi) based on her allegation that the lien was taken against homestead property without both spouses' consent.

Nationstar answered, generally denying Tong's claims and asserting various affirmative defenses. Later, Nationstar asserted counterclaims against Tong and third-party claims against Chu. Against Tong, Nationstar sought declaratory judgment regarding the judicial foreclosure of an equitable or contractual subrogation lien in the amount of $24,873.37,[4] plus legal interest on that amount

---

The record contains no information showing Doe was ever served or answered, although the docket sheet lists Doe as a pro se party and as one of three parties that filed a rule 11 agreement on August 7, 2017.

[4] In its original counterclaim against Tong, Nationstar claimed the note was subsequently negotiated to Nationstar and claimed the lien securing the note was assigned to Nationstar. Nationstar also claimed the settlement statement for the loan shows that $24,873.37 of the loan proceeds were used to pay off a prior loan held by Wells Fargo Bank, N.A. and secured by a lien against the property. Nationstar alleged Metro Bank paid $24,873.37 to satisfy and release that lien and that such payment was not gratuitous but made to

from and after July 11, 2007, along with a related order of sale and judgment for its attorney's fees and collection costs pursuant to the terms of the note and security instrument and Texas Civil Practice and Remedies Code sections 37.009 and 38.001.

In Nationstar's original third-party petition against Chu, Nationstar brought claims for actual fraud, breach of contract,[5] and suit on a note. Attached as exhibits to that pleading were the note, security instrument, loan applications dated May 31, 2007, and July 6, 2007, and a home equity affidavit and agreement dated July 6, 2007. Nationstar claimed that in the loan applications and in the affidavit and agreement, Chu stated he was unmarried and swore he did not have a spouse.

Chu, in turn, filed third-party counterclaims against Nationstar and third-party claims against two others, Katy Chen and Fiona Cheung. As with defendant Doe, the record contains no indication that third-party defendants Chen and Cheung were served or answered. According to Chu's first amended third-party counterclaim, Chu asserted against Nationstar counterclaims for negligence, negligent undertaking, gross negligence, fraud, fraud in the inducement, negligent misrepresentation, and, in the alternative as necessary, mutual and unilateral mistake, suit to quiet title and suit to remove cloud on title, and breach of contract.

---

secure to Metro Bank and its successors and assigns a first lien position and the priority and security rights of the first lienholder—apparently referring to Wells Fargo—which thus entitled Nationstar to be equitably subrogated to the prior first lienholder's rights. Additionally, Nationstar claimed that under section 24 of the security instrument, it was contractually subrogated to the rights of the prior first lienholder.

[5] In its breach of contract claim, Nationstar claimed Chu breached the affidavit and agreement by refusing to indemnify and hold it harmless against the claims asserted by Tong in this lawsuit.

–4–

About seven weeks before trial, Nationstar filed an amended counterclaim against Tong and an amended third-party petition against Chu. Each of these amended pleadings by Nationstar included a specific cause of action for judicial foreclosure of the home equity lien. Tong and Chu moved to strike those pleadings, and the court granted those motions in two separate orders signed on July 31, 2019.

The case was tried to the bench on August 14, 2019. Tong, Chu, and Nationstar appeared through counsel. A total of six attorneys appeared at trial, three representing Tong and Chu, and three representing Nationstar. No other parties or counsel participated. Five witnesses testified live or by deposition, and more than forty exhibits were admitted into evidence. The court took the matter under advisement at the conclusion of trial.

On October 4, 2019, the trial court signed a final judgment in Nationstar's favor, ordering that Tong and Chu take nothing on their claims against Nationstar, concluding a valid and enforceable lien existed on the property, granting Nationstar a foreclosure of its lien on appellants' homestead, and awarding Nationstar a total of $683,572.24. The judgment stated, "This order disposes of all parties and all claims and is a final, appealable judgment."[6] Appellants timely filed a motion for new trial,

---

[6] Although the judgment does not refer to Tong's claims against Doe or Chu's claims against Chen and Cheung, neither party questions that the judgment is final for purposes of appeal. We agree it is. First, the judgment clearly and unmistakably pronounces its finality as to all claims and all parties. *See Breitling Oil & Gas Corp. v. Petroleum Newspapers of Alaska, LLC*, No. 05-14-00299-CV, 2015 WL 1519667, at *3 (Tex. App.—Dallas Apr. 1, 2015, pet. denied) (mem. op.) ("Under *Lehmann*, a judgment is final "if and only if either [1] it actually disposes of all claims and parties then before the court, regardless of its language, or [2] it states with unmistakable clarity that it is a final judgment as to all claims and all parties.")

–5–

which the trial court denied. At appellants' request, the court issued both initial and supplemental findings of fact and conclusions of law, some of which we discuss in the next section. Appellants timely appealed.

## II. COURT'S FINDINGS AND CONCLUSIONS OF LAW

Among the trial court's findings and conclusions of law are the following:[7]

## FINDINGS OF FACT

### Establishment of the Lien Against the Property

1. On May 31, 2007, Stephen Chu ("Chu") applied for a home-equity loan (the "Loan") from Metro Bank, N.A. ("Metro Bank") secured against the real property commonly known as 5124 Ambergate Lane, Dallas, Texas 75287, and more particularly described as follows:

> LOT BLOCK 2/8738, OF OAK TREE, PHASE ONE, AN ADDITION TO THE CITY OF DALLAS, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME H, PAGE 42, OF THE MAP RECORDS OF COLLIN COUNTY, TEXAS ("Property").

2. When applying for the loan, among other things, Chu executed an initial Uniform Residential Loan Application ("Initial Application").

---

(citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001)). Second, as far as can be determined from the record, Doe, Chen, and Cheung were never served with citation and did not answer. In such circumstances, "the case stands as if there had been a discontinuance as to [the unserved parties], and the judgment is to be regarded as final for the purposes of appeal." *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962) (concluding judgment was to be regarded as final for purposes of appeal when it expressly disposed of all named parties except one who was never served with citation and did not answer); *see First Dallas Petroleum, Inc. v. Hawkins*, 715 S.W.2d 168, 169–70 (Tex. App.—Dallas 1986, no writ) (stating that changes to civil procedure rules 161 and 162 were not intended to change *Youngstown* rule and court perceived no policy reason to require formal notice of dismissal of an unserved defendant when plaintiff proceeds to judgment against all other defendants without obtaining a severance). Third, "any judgment following a conventional trial on the merits creates a presumption that the judgment is final for purposes of appeal." *Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) (per curiam) (citing *Ne. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966)).

[7] We have not included them all. For clarity, we retained the original numbering used by the trial court.

3.    At the closing of the Loan, Chu executed, among other documents, a Texas Home Equity Note ("Note") payable to Metro Bank in the original principal amount of $330,000.00, a Texas Home Equity Security Instrument ("Security Instrument") with Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary.

4.    Nationstar is the current owner and holder of the Note.

5.    The Security Instrument was validly assigned to Nationstar by an Assignment of Deed of Trust on May 21, 2012.

6.    Chu has not made payments as due under the Note and is in default.

**Tong's Consent to the Lien**

7.    Prior to July 6, 2007, Ya Qin Tong ("Tong") and Chu were married, although Chu represented to the lender in several Loan documents he signed that he was single at the time he obtained the Note.

8.    Regardless of Chu's representations, Tong consented to the lien that Chu granted in the Security Instrument.

**Judicial Estoppel**

9. Chu filed a voluntary petition for Chapter 7 bankruptcy on December 20, 2012.

10. Chu filed bankruptcy Schedules A and B on January 3, 2013.

11. Schedules A and B instruct that "[i]f the debtor is married, state whether husband, wife, both, or the marital community own the property by placing and "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

12. Chu did not place anything in the columns labeled "Husband, Wife, Joint, or Community" on his Schedules A and B.

13. Chu filed an amended Schedule B on July 25, 2014.

14. Chu did not place anything in the columns labeled "Husband, Wife, Joint, or Community" on his amended Schedule B.

15. A debtor in bankruptcy must list every contingent and unliquidated claim of every nature on his Schedule B.

16. Chu did not list any claims against Nationstar on his Schedule B or amended Schedule B.

17. Chu acted intentionally, not inadvertently, when he repeatedly represented to the bankruptcy court that he had no claims against Nationstar or anyone else related to the Loan.

18. Nationstar filed a Motion for Relief from Stay on August 15, 2014.

19. Relying on Chu's agreement to lift the automatic bankruptcy stay, the bankruptcy court entered an Order Lifting Stay as to Debtor on September 30, 2014.

**Damages**

20. The total amount owed on the Loan—including principal, interest, and all other amounts—is $605,602.20.

21. In addition, Nationstar has incurred $75,151.96 in reasonable and necessary attorney's fees and $2,818.00 in taxable costs of court.

22. Pursuant to the Loan documents, those attorney's fees and taxable costs of court are also owed on the Loan.

23. Nationstar is further entitled to recover post-judgment interest at the contractual rate of 7.357 percent.

24. Nationstar is entitled to foreclose on the Property to satisfy the foregoing outstanding Loan debt.

**Supplemental Findings of Fact**

25. The Security Instrument created a lien against the Property to secure repayment of the Loan.

26. Nationstar provided Chu timely notice of default under the Note, and when default was not cured, Nationstar timely accelerated the Note and made demand for payment in full.

27. Chu's prior position, as reflected in his representations to the bankruptcy court in his bankruptcy filings, is inconsistent with his current position that the lien granted in the Security Instrument is invalid.

28. The bankruptcy court accepted Chu's prior inconsistent position by lifting the automatic stay.

29. Chu gained an advantage from taking an inconsistent position in the bankruptcy court.

**CONCLUSIONS OF LAW**

**Tong's and Chu's Quiet-Title Claims Against Nationstar**

1.　Nationstar has a valid, enforceable lien against the Property based upon the Security Instrument.

. . . .

**Judicial Foreclosure**

1.　Nationstar is entitled to foreclose on its lien granted in the Security Instrument because Chu is in default under the Note.

**Judicial Estoppel**

1. Chu took a position in this case that is clearly inconsistent with the position he took in his bankruptcy case.

2. The bankruptcy court accepted Chu's prior position in his bankruptcy case by entering an Order Lifting Stay as to Debtor on September 30, 2014.

3. Chu acted intentionally, and not inadvertently.

4. Chu is judicially estopped from challenging Nationstar's foreclosure due to the inconsistent position taken with the bankruptcy court, and Tong, as Chu's spouse, is in privity with Chu for purposes of judicial estoppel.

## III. ISSUES

Appellants raise the following five issues:

1.  Whether the trial court erred in its conclusion that Nationstar has a valid and enforceable lien on appellants' homestead?[8]

2.  Whether the trial court erred by entering a judgment for foreclosure, even though Nationstar did not bring a claim for judicial foreclosure, and in the absence of a Rule 736 Application for nonjudicial foreclosure?

3.  Whether the trial court erred in rendering judgment in Nationstar's favor because there is legally and factually insufficient evidence to support a finding that Nationstar is the current holder of the Note.

4.  Whether the trial court erred in rendering judgment in Nationstar's favor because there is legally and factually insufficient evidence to support a finding the Security Instrument was validly assigned to Nationstar in May 21, 2012.

5.  Whether the trial court erred by awarding attorney's fees to Nationstar because Nationstar did not prevail on any of its causes of action, which it did plead, against appellants.

Nationstar disputes each of these issues and also presents a cross-point, arguing, in relation to the second issue, that the trial court erred in striking its amended pleadings that contained a specific claim for judicial foreclosure.

## IV. REVIEW STANDARDS

A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the

---

[8] Appellants also claim this issue includes the following sub-issues: (a) there is no evidence to support the trial court's conclusion that Tong consented to the lien; (b) there is legally and factually insufficient evidence to support the trial court's theory of "constructive" consent, which in and of itself contradicts the clear language of the Texas Constitution, Texas Supreme Court precedent, and renders the constitutional protections separately afforded to each spouse meaningless; (c) the trial court's conclusion that appellants' suit for quiet title is barred by judicial estoppel defies well-established Texas Supreme Court precedents that judicial estoppel cannot make an otherwise invalid lien valid; (d) even if judicial estoppel could bar appellants' claims in this case, Nationstar failed to present adequate factual and legal evidence to prove all necessary elements for its judicial estoppel defense; and (e) the trial court's conclusion that Tong was in privity with Chu through marriage for purposes of judicial estoppel deprives her of her constitutionally protected homestead rights and contradicts Texas Supreme Court precedent.

evidence at specific findings of fact, rather than at the judgment as a whole. *Shaw v. Cty. of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied) (citation omitted). If we can fairly determine from the argument the specific finding of fact which the appellant challenges, a challenge to an unidentified finding of fact may be sufficient. *Id*. (citing *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (per curiam)). The trial court's findings of fact "form the basis of the judgment upon all the grounds of recovery and of defense embraced therein." TEX. R. CIV. P. 299.

We review a trial court's legal conclusions de novo. *Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.). We evaluate those conclusions independently to determine whether the trial court correctly drew the conclusion from the facts. *Id*.

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict." *Texas Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)); *see Ramsey v. Davis*, 261 S.W.3d 811, 815 (Tex. App.—Dallas 2008, pet. denied) ("In reviewing a trial court's findings of fact for legal and factual sufficiency of the evidence, we apply the same standards we apply in reviewing the evidence supporting a jury's answer.") (citation omitted); *Shaw*, 251 S.W.3d at 169 ("Findings of fact in an appeal from a nonjury trial carry the same weight as a jury verdict and are reviewed under the same

–11–

standards that are applied in reviewing evidence to support a jury's verdict."). When the appellate record contains a reporter's record as it does in this case, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Ramsey*, 261 S.W.3d at 815 (citation omitted).

A party challenging the legal sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). When a party challenges the legal sufficiency of the evidence to support an adverse finding on which it did not have the burden of proof, the party must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam).

In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*. at 827. The "final test for legal sufficiency" is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827. "A legal sufficiency challenge fails if more than a scintilla of

–12–

evidence supports the finding." *Texas Outfitters Ltd., LLC*, 572 S.W.3d at 653 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).

In contrast, in determining factual sufficiency, we "must consider and weigh all the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. A party challenging the factual sufficiency of an adverse finding on an issue on which it has the burden of proof must demonstrate on appeal that the evidence is so weak or the adverse finding "is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* When a party challenges the factual sufficiency of the evidence on an adverse finding on which it did not have the burden of proof, the party must demonstrate there is insufficient evidence to support the finding. *Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.). If we reverse a trial court's judgment for factual insufficiency, we must "detail all the evidence relevant to the issue and clearly state why the jury's finding is factually insufficient or so against the great weight and preponderance of the evidence that it is manifestly unjust" and "how the contrary evidence greatly outweighs the evidence supporting the verdict." *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842–43 (Tex. App.—Dallas 2011, no pet.) (citations omitted); *see Dow Chem.*, 46 S.W.3d at 242 (to set aside verdict under these standards, court must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict"); *Harris Cty. v. Coats*, 607 S.W.3d 359, 381 (Tex.

–13–

App.—Houston [14th Dist.] 2020, no pet.) (same; also noting court need not do this when it affirms). The amount of evidence needed to affirm a judgment is far less than the amount necessary to reverse one. *Texas Champps Americana, Inc. v. Comerica Bank*, 643 S.W.3d 738, 744 (Tex. App.—Dallas 2022, pet. denied) (citing *Coats*, 607 S.W.3d at 381).

In applying these sufficiency standards, we remain mindful that this Court is not a factfinder. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the testimony's weight. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied). The trial court may believe one witness and disbelieve others and may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

We will not disturb a trial court's refusal to consider an amended pleading unless the complaining party shows an abuse of discretion. *European Crossroads' Shopping Ctr., Ltd. v. Criswell*, 910 S.W.2d 45, 53 (Tex. App.—Dallas 1995, writ denied) (citing *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex.1980); *Clade v. Larsen*, 838 S.W.2d 277, 280 (Tex. App.—Dallas 1992, writ denied)).

## V. ANALYSIS

### A. Lien Validity, Judicial Foreclosure, and Judicial Estoppel

In their first issue, appellants argue, in part, that the lien is invalid because Tong did not sign the security instrument and, even if Tong's consent was not

required to be in writing, there is no evidence of her consent to the lien, written or otherwise. They claim the trial court's decision regarding the validity of the lien is contrary to the law and unsupported by legally and factually sufficient evidence and state, "Because the overwhelming weight of the evidence establishes that Tong had no knowledge of the [l]ien, and never consented to it, and there's no evidence to the contrary, the trial court's finding of consent is clearly erroneous."

In their second issue, appellants argue the trial court erred in entering judgment in Nationstar's favor for judicial foreclosure, a claim they argue is not supported by Nationstar's pleadings and was not tried by consent. Nationstar disputes this by arguing, in a cross-point, that the trial court erred in striking its amended pleadings.

Appellants cite Article XVI, section 50 of the Texas Constitution, Title 7, section 153.2 of the Texas Administrative Code, and various cases discussed below as support for their arguments that the trial court erred in concluding the lien is valid, in awarding judicial foreclosure, and in concluding "Chu is judicially estopped from challenging Nationstar's foreclosure due to the inconsistent position taken with the bankruptcy court, and Tong, as Chu's spouse, is in privity with Chu for purposes of judicial estoppel."

Article XVI, section 50 of the Texas Constitution states, in pertinent part:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

(6) an extension of credit that:

(A) is secured by a voluntary lien on the homestead created *under a written agreement with the consent of each owner and each owner's spouse*[.]

. . . .

(c) *No mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section*, whether such mortgage, trust deed, or other lien, shall have been created by the owner alone, or together with his or her spouse, in case the owner is married. All pretended sales of the homestead involving any condition of defeasance shall be void.

TEX. CONST. art. XVI, § 50 (emphasis added).[9]

Title 7, section 153.2 of the Texas Administrative Code states:

153.2. Voluntary Lien: Section 50(a)(6)(A)

An equity loan must be secured by a voluntary lien on the homestead created *under a written agreement with the consent of each owner and each owner's spouse.*

(1) The consent of each owner and each owner's spouse must be obtained, regardless of whether any owner's spouse has a community property interest or other interest in the homestead.

(2) An owner or an owner's spouse who is not a maker of the note *may consent to the lien by signing a written consent to the mortgage instrument. The consent may be included in the mortgage instrument or a separate document.*

(3) The lender, at its option, may require each owner and each owner's spouse to consent to the equity loan. This option is in addition to the consent required for the lien.

---

[9] "The homestead interest is a legal interest created by the constitution that provides prophylactic protection from all but the three types of constitutionally permitted liens." *Frankel v. Butler*, No. 05-21-01122-CV, 2022 WL 17883798, at *5 (Tex. App.—Dallas Dec. 23, 2022, no pet. h.) (mem. op.) (citations omitted). "Homesteads are generally exempt from 'forced sale, for the payment of all debts,' except for those debts specifically enumerated in the Texas Constitution." *Id*. (citations omitted).

7 TEX. ADMIN. CODE § 153.2 (emphasis added).

Appellants argue Nationstar had the burden to establish the lien's validity under the Texas Constitution and cite, as support, *Chase Manhattan Mortgage Corporation v. Cook*, 141 S.W.3d 709, 713 (Tex. App.—Eastland 2004, no pet.). But, as we have noted, "[t]he prevailing view among both Texas and federal courts is that a challenge to the validity of a lien based on constitutional non-compliance is similar in nature to an affirmative defense, and thus the party seeking to void the lien carries the burden of proof." *Kingman Holdings, LLC as Tr. for Briar Oak 223 Land Tr. v. Nationstar Mortg. LLC*, No. 05-21-00075-CV, 2022 WL 2255726, at *2 (Tex. App.—Dallas June 23, 2022, no pet.) (citations omitted).

In arguing there is legally and factually insufficient evidence that Tong consented to the lien, appellants cite *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016) and *Kyle v. Strasburger*, 522 S.W.3d 461 (Tex. 2017) (per curiam), both of which are distinguishable in certain respects.

In *Wood*, the court noted that article XVI, section 50 of the Texas Constitution "has long protected the homestead, strictly limiting the types of loans that may be secured by a homestead lien" and that, in 1997, it was amended "to permit homestead liens to secure home-equity loans" through amendments that "clearly prescribed very specific and extensive limitations on those encumbrances." *Wood*, 505 S.W.3d at 545 (citing TEX. CONST. art. XVI, § 50(a)(6)(A)–(Q)). *Wood* states, "Section 50's

intent is to protect Texas homeowners and the Texas economy by ensuring a stable lending market." *Id*. at 550. *Woods* also states:

> When interpreting our state Constitution, we rely heavily on its literal text and must give effect to its plain language. *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex. 2000). "We strive to give constitutional provisions the effect their makers and adopters intended." *Id*. We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Purcell v. Lindsey*, 158 Tex. 541, 314 S.W.2d 283, 284 (1958). And we strive to "avoid a construction that renders any provision meaningless or inoperative." *Stringer*, 23 S.W.3d at 355.

*Id*. at 545; *see also Patton v. Porterfield*, 411 S.W.3d 147, 158 (Tex. App.—Dallas 2013, pet. denied) ("We interpret and give effect to the text and the plain language of article XVI, section 50(a)(6)" [and] "presume [its] language . . . was carefully selected and interpret the words as they are generally understood, relying heavily on the text.") (citation omitted). As a summary judgment case in which the primary issue involved a question regarding limitations, *Wood* is distinguishable and does not address the sufficiency issues we consider here. *See Wood*, 505 S.W.3d at 544.

In *Kyle*, the supreme court again considered article XVI, section 50(a)(6), this time in connection with a suit by an ex-wife against her ex-husband and a home equity lender, in which she sued for forfeiture and a declaration that the lien was invalid based on her allegation that her ex-husband forged her signature on the closing documents for the home equity loan. 522 S.W.3d at 463. The lender moved for summary judgment on several grounds, including limitations, and the trial court granted summary judgment without stating its reasons. *Id*. at 464. The court of

appeals affirmed based on its conclusion that the deed of trust creating the lien was "voidable and not void" and that the four-year residual statute of limitations applied and barred the ex-wife's claims, which were filed more than four years after the loan closed. *Id*. The ex-wife appealed, and the supreme court reversed, concluding, in light of *Wood*, the court of appeals erred in holding the statute of limitations barred the ex-wife's request for a declaration that the disputed deed of trust was invalid. *Id*. at 465. Noting the ex-wife submitted some evidence she did not consent to the lien on her homestead, either at the time of its creation or after the fact, the court stated the underlying home equity loan did not comply with article XVI, section 50(a)(6) of the Texas Constitution and reasoned that, because section 50(c) renders liens securing constitutionally noncompliant home equity loans invalid until cured, no statute of limitations applied to the ex-wife's claim to declare the lien invalid. *Id*. Like *Wood*,[10] as a summary judgment case in which the primary issue involved a question regarding limitations, *Kyle* is distinguishable and does not address the sufficiency issues we confront.

During oral argument, we questioned whether Tong, as an owner's spouse, had to consent to the lien in writing, a question that appears to be one of first impression.[11] Appellants' counsel conceded that the Texas Constitution does not

---

[10] *See Wood*, 505 S.W.3d at 544.

[11] Though both cases involve questions regarding lien validity, the question we consider here is different than the issue we considered in *Alexander v. Wilmington Savings Fund Society, FSB*, 555 S.W.3d 297, 298-300 (Tex. App.—Dallas 2018, no pet.), where we determined, in a summary judgment case, that a lien was

say that such consent has to be in writing. We allowed post-submission briefing, and in it, appellants argued title 7, section 153.2 of the Texas Administrative Code supports a conclusion that the constitutionally required spousal consent to a homestead lien must be in writing.[12] Nationstar disagreed.

Although neither party cited it, another existing regulation appears to support appellants' argument, at least under current law,[13] but the current regulation went into effect well after the closing of the loan in this case, and its prior version was invalidated, in any event. *See Finance Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 588–89 (Tex. 2013) (concluding prior provisions in title 7, section 153.15 contradicted purpose & text of constitution and were invalid).

We need not decide whether Tong's consent was required to be in writing because, even if we assume written consent was not required, as Nationstar argues, we conclude the record contains legally and factually insufficient evidence to support the trial court's finding that Tong consented to the lien.

---

not invalid where both a husband and wife signed a home equity deed of trust but only the husband signed the home equity note. Unlike *Alexander*, where one spouse signed the note but both spouses signed the security instrument, this case involves a situation where only one spouse signed both documents.

[12] Title 7, section 153.2(2) of the administrative code states, "An owner or an owner's spouse who is not a maker of the note may consent to the lien by signing a written consent to the mortgage instrument. The consent may be included in the mortgage instrument or a separate document." 7 TEX. ADMIN. CODE § 153.2(2) (2004).

[13] Beginning January 1, 2015 and continuing to the present, the consent required "must be signed by the owner and the owner's spouse." *See* 7 TEX. ADMIN. CODE § 153.15(3) (2014) (stating, "The consent required under Section 50(a)(6)(A) must be signed by the owner and the owner's spouse, or an attorney-in-fact described by paragraph (2) of this subsection, at the permanent physical address of an office of the lender, an attorney at law, or a title company.").

In determining legal sufficiency, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *City of Keller*, 168 S.W.3d at 822. Here, the only evidence even remotely supporting the finding of Tong's consent is a home equity affidavit Chu signed at closing which states, in part, "The Extension of Credit is secured by a voluntary lien on the Property created under a written agreement with the consent of all owners and all spouses of owners and execution of this Texas Home Equity Affidavit and Agreement is deemed evidence of such consent." While such evidence might lead a fact finder to reasonably conclude Chu considered himself to be single at the time of signing of the affidavit,[14] we do not believe the affidavit would allow one to reasonably conclude Tong consented to the lien, particularly when her existence was never acknowledged in the affidavit or other loan documents. To the extent the affidavit is any evidence at all of Tong's consent to the lien, we conclude it is nothing more than a scintilla. *See Texas Outfitters Ltd., LLC*, 572 S.W.3d at 653 (legal sufficiency challenge fails when *more* than a scintilla of evidence supports the finding) (emphasis added) (citation omitted).

As appellants point out, the record contains evidence showing Tong did not sign the note, the security instrument, or any of the related loan documents that were

---

[14] *See Nationstar Mortgage LLC v. Barefoot*, No. 14-19-00750-CV, 2021 WL 5001660, at *8 (Tex. App.—Houston [14th Dist.] Oct. 28, 2021, no pet.) (concluding under somewhat distinguishable circumstances that a similar signed affidavit merely reflected the borrower believed herself to be the sole owner, not that the owners consented).

admitted into evidence. Chu also provided uncontroverted testimony he never discussed the loan with Tong, and Tong provided uncontroverted testimony she did not know about the loan in 2007. Tong testified:

> Q. In 2007 did you know your husband applied for a loan with Metro Bank?
>
> A. I didn't know.
>
> Q. Is it typical that he would apply for a loan without talking to you about it?
>
> A. I didn't know, but for this I don't know it clear. I don't know what my husband was thinking or how, but I didn't know and I didn't know.

Tong also testified:

> Q.     But you never objected to any of his financial decisions in the past, correct?
>
> A.     That's different. I don't want to get involved in all of his companies and his businesses. But for this household, which is my only residence and my only home, if he had told me I would have objected to it.

We conclude this evidence establishes as a matter of law all vital facts to show Tong did not consent to the lien and thus conclude the evidence to support the trial court's finding that Tong consented to the lien is legally insufficient. *See Dow Chem. Co.*, 46 S.W.3d at 241 (standards regarding legal insufficiency when party bears burden of proof). We also conclude the trial court's finding regarding Tong's consent to the lien is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See* TEX. CONST. art. XVI, §§ 50(a)(6)(A), (c); *Kyle*, 522 S.W.3d at 465 (stating, "In *Wood*, we held that a lien securing a constitutionally

–22–

noncompliant home-equity loan . . . is not valid unless and until the defect in the loan is cured") (citing *Wood*, 505 S.W.3d at 548). Thus, we conclude there is legally and factually insufficient evidence of Tong's consent to the lien.

Notwithstanding this conclusion, Nationstar argues that, regardless of Tong's consent, an independent basis exists upon which to affirm the judgment—judicial estoppel.[15] Even if we assume without deciding, as Nationstar argues, that judicial estoppel is an issue we must address in resolving this appeal, "[a] lien cannot be 'estopped' into existence." *See Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988); *Lincoln v. Bennett*, 156 S.W.2d 504, 505, 507 (Tex. 1941) (concluding that, even assuming a husband was estopped to question the lien in that case, the evidence was not sufficient to raise estoppel on the part of his wife and prevent her from asserting homestead rights).

Additionally, we conclude the trial court abused its discretion[16] in applying judicial estoppel to Tong and Chu because the record lacks any evidence that the

---

[15] Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage. *Patel v. Nations Renovations LLC*, __ S.W.3d __, No. 21-0643, 2023 WL 1871558, at *4 n.5 (Tex. Feb. 10, 2023) (citing *Ferguson Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009)); *see Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (stating judicial estoppel precludes a party from adopting a position in consistent with one it maintained successfully in an earlier proceeding).

[16] Because judicial estoppel is an equitable doctrine, the trial court has discretion whether to invoke it, and we review the trial court's decision to do so for abuse of that discretion. *Perryman v. Spartan Texas Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018). *Perryman* states:

> Judicial estoppel may apply against a party who claims an asset it failed to disclose in a prior bankruptcy proceeding if (1) by claiming a right to the asset, the party asserts a position that is clearly inconsistent with its failure to disclose the asset in the bankruptcy;

order lifting stay resulted from Chu "successfully maintain[ing]" an inconsistent position in the bankruptcy court. *See Bunnell v. Lewis*, No. 05-92-02558-CV, 1993 WL 290781, at *4 (Tex. App.—Dallas July 27, 1993, pet. denied) (not designated for publication) ("Only a party who successfully maintains a position in a prior proceeding will be barred from later taking an inconsistent position."). We find nothing in the record to support the trial court's conclusion that, by entering an order lifting stay on September 30, 2014, "[t]he bankruptcy court accepted Chu's prior position in his bankruptcy case." While the record contains that order, the record lacks any indication that the bankruptcy court entered it based on any prior inconsistent position Chu took with regard to the lien and instead suggests it was entered based on the parties' agreement that the stay be lifted. Further, by the time the order lifting stay was entered, the bankruptcy court had already considered the merits of Chu's bankruptcy petition and had denied it.

In light of the record before us, we conclude the trial court erred in entering judgment in Nationstar's favor for judicial foreclosure and sustain appellants' first and second issues.[17]

---

(2) the bankruptcy court accepted and relied on the party's failure to disclose the asset; and
(3) the party's failure to disclose the asset in the bankruptcy was not "inadvertent."

*Id*.

[17] In light of our conclusion, we need not reach Nationstar's cross-point regarding the striking of its amended pleading or appellants' "sub-issue" regarding the trial court's statements regarding Tong's "constructive" consent. Additionally, we need not consider appellants' arguments regarding their quiet title claims, as the Texas Supreme Court has made it clear that section 50(a) "does not create substantive rights

–24–

## B. Evidence Nationstar was Current Note Holder or Assignee

Next, we consider appellants' arguments that there is legally and factually insufficient evidence showing Nationstar is the current holder of the note (third issue) and that the security instrument was validly assigned to it (fourth issue).

The only evidence on these issues at trial was presented through Andrew Jay Loll, Nationstar's corporate representative, and various exhibits discussed during his testimony, including, but not limited to, the note, the home equity affidavit and agreement, the home equity security instrument, the assignment of deed of trust to Nationstar, the default disclosure to Chu, and an updated payoff statement showing the total owed was $605,602.20.

The note was signed by Chu and contained, on the last page, two endorsements: one signed by Metro Bank, N.A., stating "pay to the order of Flagstar Bank, FSB without recourse" and a second one signed by Flagstar Bank, FSB, stating, "pay to the order of without recourse Flagstar Bank, FSB." Loll testified the second endorsement was not made payable to any specific person or entity and that the note in evidence was a true and correct copy of the original note. Loll also

---

beyond a defense to foreclosure of a lien securing a constitutionally noncompliant loan." *Kyle*, 522 S.W.3d at 464 (citing *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016)). *Kyle* stated:

> We note the distinction between the lien at issue and the extension of credit it secures. As we explained in *Garofolo*, section 50(a) "does not directly create, allow, or regulate home-equity lending," nor does it prohibit loans that do not comply with its requirements. 497 S.W.3d at 478. Rather, section 50(a) "simply describes what a home-equity loan must look like if a lender wants the option to foreclose on a homestead upon borrower default." *Id*.

*Id*. at n.7.

testified Nationstar is the holder of the note and has unfettered access to it, through a custodian—the identity of which he had verified but could not recall—had physical possession of the wet-ink note.

The security instrument identified the lender as Metro Bank, N.A. and the mortgagee as Mortgage Electric Registration Systems, Inc. (MERS), a separate corporation acting solely as a nominee for lender and its successors and assigns. The assignment of the deed of trust was endorsed May 21, 2012, by a representative of MERS, as nominee for Metro Bank, N.A., who assigned and transferred to Nationstar all its right, title, and interest in and to the deed of trust at issue in this case.

As support for their argument that Nationstar's ownership of the note was not established, appellants cite *First Gibraltar Bank v. Farley*, 895 S.W.2d 425, 428–29 (Tex. App.—San Antonio 1995, writ denied), a case in which our sister court reversed and remanded a summary judgment entered in favor of a guarantor against a note holder because a fact issue existed concerning ownership of the note, which precluded summary judgment. *First Gibraltar* is thus distinguishable and does not address the sufficiency issues we consider here. *See First Gibraltar*, 895 S.W.2d 425, 428–29. Appellants also argue Loll's testimony was not credible, but in a nonjury trial, the trial court, not this Court, is the sole judge of the credibility of the witnesses and the testimony's weight, *see Tate*, 767 S.W.2d at 224, and the trial

–26–

court may believe one witness and disbelieve others and may resolve any inconsistencies in a witness's testimony. *McGalliard*, 722 S.W.2d at 697.

As to the assignment of the security interest to Nationstar, appellees cite no cases considering the legal or factual sufficiency issues at issue here or establishing that the assignment in this case was invalid. The only case appellants cite in their argument regarding the assignment is *Rinard v. Bank of America*, 349 S.W.3d 148 (Tex. App.—El Paso 2011, no pet.), which does not apply here, both because it does not even involve an assignment and because it involved summary judgment. *See id.* at 152 (affirming traditional summary judgment for a mortgagee on a judicial foreclosure claim against a mortgagor).

Considering, as we must, the sufficiency standards we are to apply here, *see Graham Cent. Station*, 442 S.W.3d at 263; *Hoss*, 338 S.W.3d at 651, we conclude there is legally and factually sufficient evidence to support the trial court's findings that "Nationstar is the current owner and holder of the Note" and that "[t]he Security Instrument was validly assigned to Nationstar by an Assignment of Deed of Trust on May 21, 2012."

We overrule appellants' third and fourth issues.

## C.    Attorney's Fees

In their fifth issue, appellants urge us to reverse the attorney's fees awarded against them because Nationstar (1) did not prevail on its pleaded claims against appellants and (2) did not segregate its fees for the claims on which it prevailed.

We agree Nationstar did not prevail on its claims against Tong and we must reverse the attorney's fee award against her and render judgment in her favor.[18]

We also agree Nationstar did not prevail on its foreclosure claim against Chu, but we disagree that there is no basis for the fee award against Chu on Nationstar's note claim.[19] Nationstar prevailed on that claim and was entitled to an award of attorney's fees as a result.[20] But because there is now uncertainty as to the

---

[18] Even if, as Nationstar argues, the trial court erred in striking its amended pleading, based on our resolution of appellants' first two issues, there exists no basis for a fee award to Nationstar against Tong.

[19] The note states, in part:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its own costs and expenses in enforcing this Note to the extent not prohibited by applicable law, including Section 50(a)(6) Article XVI of the Texas Constitution. Those expenses include, for example, reasonable attorney's fees. I understand that these expenses are not contemplated as fees to be incurred in connection with maintaining or servicing this Extension of Credit.

Consistent with section 50(a)'s requirements, *see* TEX. CONST. art. XVI, section 50(a)(6)(C), the note was nonrecourse, in that it was "given without personal liability against each owner of the property described above and against the spouse of each owner unless the owner or spouse obtained this Extension of Credit by actual fraud[,]" which by the note's own terms meant the note holder can enforce its rights under the note "solely against the property described [in the note] and not personally against any owner of such property or the spouse of an owner." Because the attorney's fees award falls within the note's terms, the attorney's fees award is without recourse for personal liability as well. *See Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917–18 (Tex. 2015) (discussing nonrecourse loans generally and stating, "If the attorney's fee award falls within one of these terms [in the parties' loan agreement], it necessarily falls within the extension of credit's scope and must be without recourse for personal liability.") (citing *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 16 (Tex. 2014); TEX. CONST. art. XVI § 50(a)(6)(C)). We need not address Nationstar's arguments to the contrary raised in its motion for rehearing, when the trial court made no finding in Nationstar's favor on its actual fraud claim against Chu, the judgment denied all requested relief not awarded therein, and Nationstar did not appeal or raise any cross-point regarding that ruling.

[20] We reject appellants' argument that Nationstar did not succeed on its suit on a note against Chu. "A suit on a note has four elements: (1) a note exists, (2) the plaintiff is the note's legal owner and holder, (3) the defendant is the maker of the note, and (4) a certain balance is due and owing on the note." *Collins Asset Grp., LLC v. Ayres*, No. 05-21-00295-CV, 2022 WL 951004, at *2 (Tex. App.—Dallas Mar. 30, 2022, no pet.) (mem. op.) (citing *Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 237 (Tex. App.—Dallas 2011, pet. denied); *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970)). Here, the trial court's judgment states the loan to Chu, as evidenced by the note, is valid and enforceable, states Nationstar is the current holder of the note, and concludes that the amount due and owing under the note is $605,602.20.

appropriate amount of those fees in light of our disposition, we must remand for further proceedings in the trial court to determine the amount of reasonable and necessary attorney's fees Nationstar incurred in the prosecution of its note claim against Chu, the only claim upon which Nationstar has now prevailed.[21]

We sustain appellants' fifth issue to the extent that we reverse the fee award as to Tong but remand to the trial court for a redetermination of the reasonable and necessary amount of attorney's fees due Nationstar based on its suit on a note against Chu. Given this, we need not decide the segregation question.

## VI. CONCLUSION

Based on the foregoing, we reverse, with respect to both appellants, the portions of the trial court's judgment allowing foreclosure and render judgment that Nationstar take nothing by way of those claims or the attorney's fees claims associated with foreclosure; reverse the amount of the attorney's fee determination against Chu on Nationstar's note claim; and remand to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees due Nationstar on its suit on a note against Chu.

---

[21] *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 488–89 (Tex. 2019) (stating, "When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary."); *Young v. Qualls*, 223 S.W.3d 312, 314 (Tex.2007) (per curiam) (noting need to consider results obtained and concluding case must be remanded to trial court for new trial on attorney's fees when court could not be reasonably certain the trial court was not significantly affected by the error that resulted in reduction of award on appeal); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (stating court is to consider the results obtained in determining the reasonableness of a fee).

In all other respects, we affirm the trial court's judgment.


                                          /Ken Molberg/
                                          KEN MOLBERG
                                          JUSTICE

191558F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

YA QIN TONG AND STEPHEN
CHU, Appellant

No. 05-19-01558-CV          V.

NATIONSTAR MORTGAGE LLC,
Appellee

On Appeal from the 429th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 429-04255-
2015.
Opinion delivered by Justice
Molberg. Justices Nowell and
Goldstein participating.

On the Court's own motion, we **WITHDRAW** our opinion and **VACATE** our judgment of November 28, 2022.  This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.  We **REVERSE**, with respect to both appellants, the portions of the trial court's judgment allowing foreclosure and render judgment that Nationstar take nothing by way of those claims or the attorney's fees claims associated with foreclosure; **REVERSE** the amount of the attorney's fee determination against Chu on Nationstar's note claim and **REMAND** to the trial court for a redetermination of the amount of reasonable and necessary attorney's fees due Nationstar on its suit on a note against Chu; and, in all other respects, we **AFFIRM** the trial court's judgment.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 9th day of March, 2023.